**FILED**

DEC 1 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Page 1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### 333 CONSTITUTION AVE N.W.
### WASHINGTON D.C. 20001

| | |
|---|---|
| Jack A.Schwaner )<br>1Great Oak Cir. Apt.B-44 )<br>Newport News Va.23606 )<br>)<br>Plaintiff )<br>)<br>Vs )<br>)<br>David S.C.Chu )<br>Under Secretary of Defense )<br>(Personnel and Readiness) )<br>Pentagon,Washington D.C. )<br>)<br>Defendant ) | Case: 1:07-cv-02349<br>Assigned To : Sullivan, Emmet G.<br>Assign. Date : 12/19/2007<br>Description: Admn. Agency Review |

The Plaintiff is a Resident of of Newport News,Va.

## COMPLAINT

## DODI.1344-07,March 30,2007

## PERSONAL COMMERCIAL SOLICITATION EVALUATION

## E5. ENCLOSURE 5

The Plaintiff seeks the complete removal of a newly introduced Form E 5 Enclosure 5 in DODI 1344-07 dated Mar.30,2007 and include the removal of any portion specially related to E5 Enclosure 5 within DODI 1344-07.The Department of Defense erred by naming incorrectly the canceled DOD 1344-7 a Directive and not D.O.D 1344-07 .Since E5 Enclosure 5 pertains to Insurance Agents violates th Privacy Act also missing is a privacy waver form. This form is illegal ,unenforceable ,arbitrary capricious is discriminatory and lacks due process  Infractions enclosed in E5 enclosure 5 with the exception of 4.a and 4.b are all included in DODI 1344-07 . The Plaintiff finds form E5 Enclosure 5 requires the Insurance Agent to render this form to the prospective client who may or may not utilize it,.this making a judgmental call with no consequential intrusion that provides a sanctuary toward the accuser. Note Exhibits 1 and 2 are explicit instructions on conduct of Insurance Agents and must be signed that it is understood  and any violations within those regulations can cause revocation in a Show Cause Hearing if the allegations are proven correct "Army revocation is 2 years". As Exhibit 3 shows some Army installations choose to use 18 USC Section 1382 a Criminal Procedure in the revocation

**RECEIVED**
DEC 1 3 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Page 2
to permanently bar Insurance Companies or their Agents ignoring the correct procedure using the regulations in DOD 1344-07 or AR 210-7.

## EXHIBITS

1-DOD 1344-07 Rules of Conduct relating to Insurance Agents on Military Installations

2-AR 210-7 Rules of Conduct relaying to Insurance Agents on a Army Installations

3-3 page copy of Control of Personal Commercial Solicitation on Army Installations

4-Copy of Crimes and Criminal Procedure-18 USC Section 1382

5-Copy of E5 Enclosure 5

6-Class action suits against Insurance Companies .and its Agents by US Government ,the defendants received favorable verdicts They lost mainly because all signed "a statement of understanding".

## CONCLUSION

   To be a Insurance Agents its called a Profession and must pass a rigid state Insurance Exam and if he chooses to work in Military Installations he is required to read and sign he understand the Installation regulations, all violations are found in the stated regulations,not in E5 enclosure 5
   The Plaintiff request this Court for a summary Judgment against the Defendant in the removal of Department of Defense Instruction 1344-07 E5 Enclosure 5 and all material related to E5 Enclosure 5.

Respectfully Submitted

Jack A.Schwaner
Great Oak Cir. Apt.B-44
Newport News,Va 23606
(757) 595-2804

## Certificate of Service

I hereby certify this Day of ,07 a true and complete copy was mail first class postage of this informal brief to the party address below.

David S.C.Chu
Under Secretary of Defense
(Personnel and Readiness)
Pentagon, Washington D.C.

Jack A.Schwaner
1 Great Oak Cir. Apt.B-44
Newport News,Va.



# Department of Defense
# **INSTRUCTION**

**NUMBER** 1344.07
March 30, 2006

USD(P&R)

SUBJECT: Personal Commercial Solicitation on DoD Installations

References: (a) DoD Directive 1344.7, "Personal Commercial Solicitation on DoD
　　　　　　　　Installations," February 13, 1986 (hereby canceled)
　　　　　　(b) Deputy Secretary of Defense Memorandum, "DoD Directives Review –
　　　　　　　　Phase II," July 13, 2005
　　　　　　(c) DoD Directive 5124.2, "Under Secretary of Defense for Personnel and
　　　　　　　　Readiness (USD(P&R))," February 11, 2006
　　　　　　(d) Section 577 of Public Law 109-163, "The National Defense Authorization Act
　　　　　　　　For Fiscal Year 2006, January 6, 2006
　　　　　　(e) through (s), see Enclosure 1

## 1. REISSUANCE AND PURPOSE

This Instruction:

　　1.1. Reissues Reference (a) as a DoD Instruction according to guidance in References (b)
and (c).

　　1.2. Implements Section 577 of Public Law No. 109-163 (2006) Reference (d) and
establishes policy and procedures for personal commercial solicitation on DoD installations.

　　1.3. Continues the established annual DoD registration requirement for the sale of insurance
and securities on DoD installations overseas.

　　1.4. Identifies prohibited practices that may cause withdrawal of commercial solicitation
privileges on DoD installations and establishes notification requirements when privileges are
withdrawn.

　　1.5. Establishes procedures for persons solicited on DoD installations to evaluate solicitors.

　　1.6. Prescribes procedures for providing financial education programs to military personnel.

07 2349
**FILED**
DEC 1 9 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## 2. APPLICABILITY AND SCOPE

2.1. This Instruction applies to the Office of the Secretary of Defense, the Military Departments, the Chairman of the Joint Chiefs of Staff, the Combatant Commands, the Office of the Inspector General of the Department of Defense, the Defense Agencies, the DoD Field Activities, and all other organizational entities in the Department of Defense (hereafter referred to collectively as the "DoD Components").

2.2. This Instruction does not apply to services furnished by residential service companies, such as deliveries of milk, laundry, newspapers, and related services to personal residences on the installation requested by the resident and authorized by the installation commander.

2.3. This Instruction applies to all other personal commercial solicitation on DoD Installations. It includes meetings on DoD installations of private, non-profit, tax-exempt organizations that involve commercial solicitation. Attendance at these meetings shall be voluntary and the time and place of such meetings are subject to the discretion of the installation commander or his or her designee.

## 3. DEFINITIONS

Terms used in this Instruction are defined in Enclosure 2 or in Joint Publication 1-02, "DoD Dictionary of Military and Associated Terms" (Reference (e)).

## 4. POLICY

4.1. It is DoD policy to safeguard and promote the welfare of DoD personnel as consumers by setting forth a uniform approach to the conduct of all personal commercial solicitation and sales to them by dealers and their agents. For those individuals and their companies that fail to follow this policy, the opportunity to solicit on military installations may be limited or denied as appropriate.

4.2. Command authority includes authority to approve or prohibit all commercial solicitation covered by this Instruction. Nothing in this Instruction limits an installation commander's inherent authority to deny access to vendors or to establish time and place restrictions on commercial activities at the installation.

*DoDI 1344.07, March 30, 2006*

## 5. RESPONSIBILITIES

5.1. The <u>Principal Deputy Under Secretary of Defense for Personnel and Readiness</u> (PDUSD(P&R)), under the Under Secretary of Defense for Personnel and Readiness, shall:

5.1.1. Identify and publish policies and procedures governing personal commercial solicitation on DoD installations consistent with the policy set forth in this Instruction.

5.1.2. Maintain and make available to installation commanders and appropriate Federal personnel the current master file of all individual agents, dealers, and companies who have their privileges withdrawn at any DoD installation.

5.1.3. Develop and maintain a list of all State Insurance Commissioners' points of contact for DoD matters and forward this list to the Military Services.

5.2. The <u>Heads of the DoD Components</u> shall:

5.2.1. Ensure implementation of this Instruction and compliance with its provisions.

5.2.2. Require installations under their authority to report each instance of withdrawal of commercial solicitation privileges.

5.2.3. Submit lists of all individuals and companies who have had their commercial solicitation privileges withdrawn at installations under their authority to the PDUSD(P&R) in accordance with this Instruction.

## 6. PROCEDURES

6.1. <u>General</u>

6.1.1. No person has authority to enter a DoD installation to transact personal commercial solicitation as a matter of right. Personal commercial solicitation may be permitted only if the following requirements are met:

6.1.1.1. The solicitor is duly licensed under applicable Federal, State, or municipal laws and has complied with installation regulations.

6.1.1.2. A specific appointment has been made for each meeting with the individual concerned. Each meeting is conducted only in family quarters or in other areas designated by the installation commander.

6.1.1.3. The solicitor agrees to provide each person solicited the personal commercial solicitation evaluation included in Enclosure 5 during the initial appointment. The person being solicited is not required to complete the evaluation. However, completed evaluations should be sent by the person who was solicited to the office designated by the installation commander on the back of the evaluation form.

6.1.1.4. The solicitor agrees to provide DoD personnel with a written reminder, prior to their making a financial commitment, that free legal advice is available from the Office of the Staff Judge Advocate.

6.1.2. Solicitors on overseas installations shall be required to observe, in addition to the above, the applicable laws of the host country. Upon request, the solicitor must present documentary evidence to the installation commander that the company they represent, and its agents, meet the applicable licensing requirements of the host country.

## 6.2. Life Insurance Products and Securities

6.2.1. Life insurance products and securities offered and sold to DoD personnel shall meet the prerequisites described in Enclosure 3 of this Instruction.

6.2.2. Installation commanders may permit insurers and their agents to solicit on DoD installations if the requirements of paragraph 6.1. are met and if they are licensed under the insurance laws of the State where the installation is located. Commanders will ensure the agent's license status and complaint history are checked with the appropriate State or Federal regulators before granting permission to solicit on the installation.

6.2.3. In addition, before approving insurance and financial product agents' requests for permission to solicit, commanders shall review the list of agents and companies currently barred, banned, or limited from soliciting on any or all DoD installations. This list may be viewed via the *Personal Commercial Solicitation Report* "quick link" at www.commanderspage.com. In overseas areas, the DoD Components shall limit insurance solicitation to those insurers registered under the provisions of Enclosure 4 of this Instruction.

6.2.4. The conduct of all insurance business on DoD installations shall be by specific appointment. When establishing the appointment, insurance agents shall identify themselves to the prospective purchaser as an agent for a specific insurer.

6.2.5. Installation commanders shall designate areas where interviews by appointment may be conducted. The opportunity to conduct scheduled interviews shall be extended to all solicitors on an equitable basis. Where space and other considerations limit the number of agents using the interviewing area, the installation commander may develop and publish local policy consistent with this concept.

6.2.6. Installation commanders shall make disinterested third-party insurance counseling available to DoD personnel desiring counseling. Financial counselors shall encourage DoD personnel to seek legal assistance or other advice from a disinterested third-party before entering a contract for insurance or securities.

6.2.7. In addition to the solicitation prohibitions contained in paragraph 6.4., the DoD Components shall prohibit the following:

6.2.7.1. The use of DoD personnel representing any insurer, dealing directly or indirectly on behalf of any insurer or any recognized representative of any insurer on the installation, or as an agent or in any official or business capacity with or without compensation.

6.2.7.2. The use of an agent as a participant in any Military Service-sponsored education or orientation program.

6.2.7.3. The designation of any agent or the use by any agent of titles (for example, "Battalion Insurance Counselor," "Unit Insurance Advisor," "Servicemen's Group Life Insurance Conversion Consultant,") that in any manner, states, or implies any type of endorsement from the U.S. Government, the Armed Forces, or any State or Federal agency or government entity.

6.2.7.4. The use of desk space for interviews for other than a specific prearranged appointment. During such appointment, the agent shall not be permitted to display desk signs or other materials announcing his or her name or company affiliation.

6.2.7.5. The use of an installation "daily bulletin," marquee, newsletter, webpage, or other official notice to announce the presence of an agent and/or his or her availability.

6.3. <u>Supervision of On-Base Commercial Activities</u>

6.3.1. All pertinent installation regulations shall be posted in a place easily accessible to those conducting and receiving personal commercial solicitation on the installation.

6.3.2. The installation commander shall make available a copy of installation regulations to anyone conducting on-base commercial solicitation activities warning that failure to follow the regulations may result in the loss of solicitation privileges.

6.3.3. The installation commander, or designated representative, shall inquire into any alleged violations of this Instruction or of any questionable solicitation practices. The DD Form 2885, Personal Commercial Solicitation Evaluation, at Enclosure 5 is provided as a means to supervise solicitation activities on the installation. DD Form 2885 is available at the Department of Defense Forms Web site under DefenseLink, Publications.

6.4. <u>Prohibited Practices</u>. The following commercial solicitation practices shall be prohibited on all DoD installations:

6.4.1. Solicitation of recruits, trainees, and transient personnel in a group setting or "mass" audience and solicitation of any DoD personnel in a "captive" audience where attendance is not voluntary.

6.4.2. Making appointments with or soliciting military or DoD civilian personnel during their normally scheduled duty hours.

6.4.3. Soliciting in barracks, day rooms, unit areas, transient personnel housing, or other areas where the installation commander has prohibited solicitation.

6.4.4. Use of official military identification cards or DoD vehicle decals by active duty, retired, or reserve members of the Military Services to gain access to DoD installations for the purpose of soliciting. When entering the installation for the purpose of solicitation, solicitors with military identification cards and/or DoD vehicle decals must present documentation issued by the installation authorizing solicitation.

6.4.5. Procuring, attempting to procure, supplying, or attempting to supply non-public listings of DoD personnel for purposes of commercial solicitation, except for releases made in accordance with DoD Directive 5400.7 (Reference (f)).

6.4.6. Offering unfair, improper, or deceptive inducements to purchase or trade.

6.4.7. Using promotional incentives to facilitate transactions or to eliminate competition.

6.4.8. Using manipulative, deceptive, or fraudulent devices, schemes, or artifices, including misleading advertising and sales literature. All financial products, which contain insurance features, must clearly explain the insurance features of those products.

6.4.9. Using oral or written representations to suggest or give the appearance that the Department of Defense sponsors or endorses any particular company, its agents, or the goods, services, and commodities it sells.

6.4.10. DoD personnel making personal commercial solicitations or sales to DoD personnel who are junior in rank or grade, or to the family members of such personnel, except as authorized in Section 2-205 and 5-409 of the Joint Ethics Regulation, DoD 5500.7-R (Reference (g)).

6.4.11. Entering into any unauthorized or restricted area.

*DoDI 1344.07, March 30, 2006*

6.4.12.  Using any portion of installation facilities, including quarters, as a showroom or store for the sale of goods or services, except as specifically authorized by DoD Directive 1330.17 and DoD Instructions 1015.10, 1000.15, and 1330.21 (References (h), (i), (j), and (k)). This does not apply to normal home enterprises that comply with applicable State and local laws and installation rules.

6.4.13.  Soliciting door to door or without an appointment.

6.4.14.  Unauthorized advertising of addresses or telephone numbers used in personal commercial solicitation activities conducted on the installation, or the use of official positions, titles, or organization names, for the purpose of personal commercial solicitation, except as authorized in Reference (g).  Military grade and military service as part of an individual's name (e.g., Captain Smith, U.S. Marine Corps) may be used in the same manner as conventional titles, such as "Mr.", "Mrs.", or "Honorable."

6.4.15.  Contacting DoD personnel by calling a government telephone, faxing to a government fax machine, or by sending e-mail to a government computer, unless a pre-existing relationship (i.e., the DoD member is a current client or requested to be contacted) exists between the parties and the DoD member has not asked for contact to be terminated.

6.5.  Denial, Suspension, and Withdrawal of Installation Solicitation Privileges

6.5.1.  The installation commander shall deny, suspend, or withdraw permission for a company and its agents to conduct commercial activities on the base if such action is in the best interests of the command.  The grounds for taking these actions may include, but are not limited to, the following:

6.5.1.1.  Failure to meet the licensing and other regulatory requirements prescribed in this Instruction, or violations of the State law where the installation is located.  Commanders will request that appropriate State officials determine whether a company or agent violated State law.

6.5.1.2.  Commission of any of the practices prohibited in paragraphs 6.2.6 and 6.4.

6.5.1.3.  Substantiated complaints and/or adverse reports regarding the quality of goods, services, and/or commodities, and the manner in which they are offered for sale.

6.5.1.4.  Knowing and willful violations of Pub. L. 90-321, "Truth in Lending Act" (Reference (l)).

6.5.1.5.  Personal misconduct by a company's agent or representative while on the installation.

6.5.1.6. The possession of, and any attempt to obtain supplies of direct deposit forms, or any other form or device used by Military Departments to direct a Service member's pay to a third party, or possession or use of facsimiles thereof. This includes using or assisting in using a Service member's "MyPay" account or other similar internet medium for the purpose of establishing a direct deposit for the purchase of insurance or other investment product.

6.5.1.7. Failure to incorporate and abide by the Standards of Fairness policies contained in DoD Instruction 1344.9 (Reference (m)).

6.5.2. The installation commander may determine that circumstances dictate the immediate suspension of solicitation privileges while an investigation is conducted. Upon suspending solicitation privileges, the commander shall promptly inform the agent and the company the agent represents, in writing.

6.5.3. In suspending or withdrawing solicitation privileges, the installation commander shall determine whether to limit such action to the agent alone or extend it to the company the agent represents. This decision shall be based on the circumstances of the particular case, including, but not limited to, the nature of the violations, frequency of violations, the extent to which other agents of the company have engaged in such practices, and any other matters tending to show the culpability of an individual and the company.

6.5.4. If the investigation determines an agent or company does not possess a valid license or the agent, company, or product has failed to meet other State or Federal regulatory requirements, the installation commander shall immediately notify the appropriate regulatory authorities.

6.5.5. In a withdrawal action, the commander shall allow the individual or company an opportunity to show cause as to why the action should not be taken. To "show cause" means an opportunity must be given for the aggrieved party to present facts on an informal basis for the consideration of the installation commander or the commander's designee. The installation commander shall make a final decision regarding withdrawal based upon the entire record in each case. Installation commanders shall report concerns or complaints involving the quality or suitability of financial products or concerns or complaints involving marketing methods used to sell these products to the appropriate State and Federal regulatory authorities. Also, installation commanders shall report any suspension or withdrawal of insurance or securities products solicitation privileges to the appropriate State or Federal regulatory authorities.

6.5.6. The installation commander shall inform the Military Department concerned of any denial, suspension, withdrawal, or reinstatement of an agent or company's solicitation privileges and the Military Department shall inform the Office of the PDUSD(P&R), which will maintain a list of insurance and financial product companies and agents currently barred, banned, or otherwise limited from soliciting on any or all DoD installations. This list may be viewed at www.commanderspage.com. If warranted, the installation commander may recommend to the Military Department concerned that the action taken be extended to other DoD installations. The Military Department may extend the action to other military installations in the Military

Department. The PDUSD(P&R), following consultation with the Military Department concerned, may order the action extended to other Military Departments.

6.5.7. All suspensions or withdrawals of privileges may be permanent or for a set period of time. If for a set period, when that period expires, the individual or company may reapply for permission to solicit through the installation commander or Military Department originally imposing the restriction. The installation commander or Military Department reinstating permission to solicit shall notify the Office of the PDUSD(P&R) and appropriate State and Federal regulatory agencies when such suspensions or withdrawals are lifted.

6.5.8. The Secretaries of the Military Departments may direct the Armed Forces Disciplinary Control Boards in all geographical areas in which the grounds for withdrawal action have occurred to consider all applicable information and take action the Boards deem appropriate.

6.5.9. Nothing in this Instruction limits the authority of the installation commander or other appropriate authority from requesting or instituting other administrative and/or criminal action against any person, including those who violate the conditions and restrictions upon which installation entry is authorized.

6.6. Advertising and Commercial Sponsorship

6.6.1. The Department of Defense expects voluntary observance of the highest business ethics by commercial enterprises soliciting DoD personnel through advertisements in unofficial military publications when describing goods, services, commodities, and the terms of the sale (including guarantees, warranties, and the like).

6.6.2. The advertising of credit terms shall conform to the provisions of Reference (l) as implemented by Federal Reserve Board Regulation Z according to 12 CFR Section 226 (Reference (n)).

6.6.3. Solicitors may provide commercial sponsorship to DoD Morale, Welfare and Recreation programs or events according to Reference (i). However, sponsorship may not be used as a means to obtain personal contact information for any participant at these events without written permission from the individual participant. In addition, commercial sponsors may not use sponsorship to advertise products and/or services not specifically agreed to in the sponsorship agreement.

6.6.4. The installation commander may permit organizations to display sales literature in designated locations subject to command policies. In accordance with DoD 7000.14-R, Volume 7(a) (Reference (o)), distribution of competitive literature or forms by off-base banks and/or credit unions is prohibited on installations where an authorized on-base bank and/or credit union exists.

6.7. Educational Programs

6.7.1. The Military Departments shall develop and disseminate information and provide educational programs for members of the Military Services on their personal financial affairs, including such subjects as insurance, Government benefits, savings, budgeting, and other financial education and assistance requirements outlined in DoD Instruction 1342.27 (Reference (p)). The Military Departments shall ensure that all instructors are qualified as appropriate for the subject matter presented. The services of representatives of authorized on-base banks and credit unions may be used for this purpose. Under no circumstances shall commercial agents, including representatives of loan, finance, insurance, or investment companies, be used for this purpose. Presentations shall only be conducted at the express request of the installation commander.

6.7.2. The Military Departments shall also make qualified personnel and facilities available for individual counseling on loans and consumer credit transactions in order to encourage thrift and financial responsibility and promote a better understanding of the wise use of credit, as prescribed in DoD 7000.14-R, Volume 5, Chapter 34 (Reference (q)).

6.7.3. The Military Departments shall encourage military members to seek advice from a legal assistance officer, the installation financial counselor, their own lawyer, or a financial counselor, before making a substantial loan or credit commitment.

6.7.4. Each Military Department shall provide advice and guidance to DoD personnel who have a complaint under Reference (m) or who allege a criminal violation of its provisions, including referral to the appropriate regulatory agency for processing of the complaint.

6.7.5. Banks and credit unions operating on DoD installations are required to provide financial counseling services as an integral part of their financial services offerings under DoD Directive 1000.11 (Reference (r)). Representatives of and materials provided by authorized banks and/or credit unions located on military installations may be used to provide the educational programs and information required by this Instruction subject to the following conditions:

6.7.5.1. If the bank or credit union operating on a DoD installation sells insurance or securities or has any affiliation with a company that sells or markets insurance or other financial products, the installation commander shall consider that company's history of complying with this Instruction before authorizing the on-base financial institution to provide financial education.

6.7.5.2. All prospective educators must agree to use appropriate disclaimers in their presentations and on their other educational materials. The disclaimers must clearly indicate that they do not endorse or favor any commercial supplier, product, or service, or promote the services of a specific financial institution.

6.7.6.  Use of other non-government organizations to provide financial education programs is limited as follows:

6.7.6.1.  Under no circumstances shall commercial agents, including employees or representatives of commercial loan, finance, insurance, or investment companies, be used.

6.7.6.2.  The limitation in subparagraph 6.7.6.1. does not apply to educational programs and information regarding the Survivor Benefits Program and other government benefits provided by tax-exempt organizations under section (c) of 26 U.S.C. 501 (Reference (s)) or by any organization providing such a benefit under a contract with the Government.

6.7.6.3.  Educators from non-government, non-commercial organizations expert in personal financial affairs and their materials may, with appropriate disclaimers, provide the educational programs and information required by this Instruction if approved by a Presidentially-appointed, Senate-confirmed civilian official of the Military Department concerned.  Presentations by approved organizations shall be conducted only at the express request of the installation commander.  The following criteria shall be used when considering whether to permit a non-government, non-commercial organization to present an educational program or provide materials on personal financial affairs:

6.7.6.3.1.  The organization must qualify as a tax-exempt organization under section (c)(3) or 1(c)(23) of Reference (s)).

6.7.6.3.2.  If the organization has any affiliation with a company that sells or markets insurance or other financial products, the approval authority shall consider that company's history of complying with this Instruction.

6.7.6.3.3.  All prospective educators must use appropriate disclaimers, in their presentations and on their other educational materials, which clearly indicate that they and the Department of Defense do not endorse or favor any commercial supplier, product, or service or promote the services of a specific financial institution.

7.  <u>INFORMATION REQUIREMENTS</u>

The reporting requirements concerning the suspension or withdrawal of solicitation privileges have been assigned Report Control Symbol (RCS) DD-P&R(Q)2182 in accordance with DoD 8910.1-M (Reference (t)).

*DoDI 1344.07, March 30, 2006*

8. <u>EFFECTIVE DATE</u>

This Instruction is effective immediately.

David S.C. Chu
**Under Secretary of Defense
(Personnel and Readiness**

Enclosures - 5
   E1.  References, continued
   E2.  Definitions
   E3.  Life Insurance Products and Securities
   E4.  The Overseas Life Insurance Registration Program
   E5.  Personal Commercial Solicitation Evaluation

*DoDI 1344.07, March 30, 2006*

E1. <u>ENCLOSURE 1</u>

<u>REFERENCES</u>, continued

(e)    Joint Publication 1-02, "DoD Dictionary of Military and Associated Terms"
(f)    DoD Directive 5400.07, "Freedom of Information Act (FOIA) Program," October 28, 2005
(g)    DoD 5500.7-R, "Joint Ethics Regulation (JER)," August 30, 1993
(h)    DoD Directive 1330.17, "Military Commissaries," March 13, 1987
(i)    DoD Instruction 1015.10, "Programs for Military Morale, Welfare and Recreation (MWR)," November 3, 1995
(j)    DoD  Instruction 1000.15, "Private Organizations on DoD Installations," December 20, 2005
(k)    DoD Instruction 1330.21, "Armed Services Exchange Regulations," July 14, 2005
(l)    Section 1601 of title 15, United States Code
(m)    DoD Directive 1344.9, "Indebtedness of Military Personnel," October 27, 1994
(n)    Title 12, Code of Federal Regulations, Section 226
(o)    DoD 7000.14-R, Volume 7a, Chapter 41 and 42, "DoD Financial Management Regulation," February 2002
(p)    DoD Instruction 1342.27, "Personal Financial Management for Service Members," November 12, 2004
(q)    DoD 7000.14-R, Volume 5, Chapter 34, "Procedures Governing Banks and Credit Unions and Other Financial Institutions on DoD Installation," September 2000
(r)    DoD Directive 1000.11, "Financial Institutions on DoD Installations," June 9, 2000
(s)    Section 501 of title 26, United States Code
(t)    DoD 8910.1-M, "DoD Procedures for Management of Information Requirements," June 30, 1998
(u)    Section 1751 of title 12, United States Code

ENCLOSURE 1

## E2. ENCLOSURE 2

## DEFINITIONS

E2.1.1. <u>Agent</u>. An individual who receives remuneration as a salesperson or whose remuneration is dependent on volume of sales of a product or products. (Also, referred to as "commercial agent" or "producer"). In this Instruction, the term "agent" includes "general agent" unless the content clearly conveys a contrary intent.

E2.1.2. <u>"Authorized" Bank and/or Credit Union</u>. Bank and/or credit union selected by the installation commander through open competitive solicitation to provide exclusive on-base delivery of financial services to the installation under a written operating agreement.

E2.1.3. <u>Banking Institution</u>. An entity chartered by a State or the Federal Government to provide financial services.

E2.1.4. <u>Commercial Sponsorship</u>. The act of providing assistance, funding, goods, equipment (including fixed assets), or services to an MWR program or event by an individual, agency, association, company or corporation, or other entity (sponsor) for a specified (limited) period of time in return for public recognition or advertising promotions. Enclosure 9 of Reference (i) provides general policy governing commercial sponsorship.

E2.1.5. <u>Credit Union</u>. A cooperative nonprofit association, incorporated under the Credit Union Act (12 U.S.C. 1751 (Reference (u)), or similar state statute, for the purpose of encouraging thrift among its members and creating a source of credit at a fair and reasonable rate of interest.

E2.1.6. <u>DoD Installation</u>. For the purposes of this Instruction, any Federally owned, leased, or operated base, reservation, post, camp, building, or other facility to which DoD personnel are assigned for duty, including barracks, transient housing, and family quarters.

E2.1.7. <u>DoD Personnel</u>. For the purposes of this Instruction, all active duty officers (commissioned and warrant) and enlisted members of the Military Departments and all civilian employees, including nonappropriated fund employees and special Government employees, of the Department of Defense.

E2.1.8. <u>Financial Services</u>. Those services commonly associated with financial institutions in the United States, such as electronic banking (e.g., ATMs), in-store banking, checking, share and savings accounts, fund transfers, sale of official checks, money orders and travelers checks, loan services, safe deposit boxes, trust services, sale and redemption of U.S. Savings Bonds, and acceptance of utility payments and any other consumer-related banking services.

E2.1.9. <u>General Agent</u>. A person who has a legal contract to represent a company. See "<u>Agent</u>."

E2.1.10. <u>Insurance Carrier</u>. An insurance company issuing insurance through an association reinsuring or coinsuring such insurance.

E2.1.11. <u>Insurance Product</u>. A policy, annuity, or certificate of insurance issued by an insurer or evidence of insurance coverage issued by a self-insured association, including those with savings and investment features.

E2.1.12. <u>Insurer</u>. An entity licensed by the appropriate department to engage in the business of insurance.

E2.1.13. <u>Military Services</u>. See Joint Publication 1-02, "DoD Dictionary of Military and Associated Terms (Reference (e)).

E2.1.14. <u>Normal Home Enterprises</u>. Sales or services that are customarily conducted in a domestic setting and do not compete with an installation's officially sanctioned commerce.

E2.1.15. <u>Personal Commercial Solicitation</u>. Personal contact, to include meetings, meals, or telecommunications contact, for the purpose of seeking private business or trade.

E2.1.16. <u>Securities</u>. Mutual funds, stocks, bonds, or any product registered with the Securities and Exchange Commission except for any insurance or annuity product issued by a corporation subject to supervision by State insurance authorities.

E2.1.17. <u>Suspension</u>. Temporary termination of privileges pending completion of a commander's inquiry or investigation.

E2.1.18. <u>Withdrawal</u>. Termination of privileges for a set period of time following completion of a commander's inquiry or investigation.

## E3.  ENCLOSURE 3

## LIFE INSURANCE PRODUCTS AND SECURITIES

### E3.1.  LIFE INSURANCE PRODUCT CONTENT PREREQUISITES

Companies must provide DoD personnel a written description for each product or service they intend to market to DoD personnel on DoD installations.  These descriptions must be written in a manner that DoD personnel can easily understand, and fully disclose the fundamental nature of the policy.  Companies must be able to demonstrate that each form to be used has been filed with and approved, where applicable, by the insurance department of the State where the installation is located.  Insurance products marketed to DoD personnel on overseas installations must conform to the standards prescribed by the laws of the state where the company is incorporated.

E3.1.1.  Insurance products, other than certificates or other evidence of insurance issued by a self-insured association, offered and sold worldwide to personnel on DoD installations, must:

E3.1.1.1.  Comply with the insurance laws of the State or country in which the installation is located and the requirements of this Instruction.

E3.1.1.2.  Contain no restrictions by reason of Military Service or military occupational specialty of the insured, unless such restrictions are clearly indicated on the face of the contract.

E3.1.1.3.  Plainly indicate any extra premium charges imposed by reason of Military Service or military occupational specialty.

E3.1.1.4.  Contain no variation in the amount of death benefit or premium based upon the length of time the contract has been in force, unless all such variations are clearly described in the contract.

E3.1.1.5.  In plain and readily understandable language, and in type font at least as large as the font used for the majority of the policy, inform Service members of:

E3.1.1.5.1.  The availability and cost of government subsidized Servicemen's Group Life Insurance.

E3.1.1.5.2.  The address and phone number where consumer complaints are received by the State insurance commissioner for the State in which the insurance product is being sold.

E3.1.1.5.3.  That the U.S. Government has in no way sanctioned, recommended, or encouraged the sale of the product being offered.  With respect to the sale or solicitation of insurance on Federal land or facilitates located outside the United States, insurance products must contain the address and phone number where consumer complaints are received by the State insurance commissioner for the State which has issued the agent a resident license or the company is domiciled, as applicable.

E3.1.2.  To comply with subparagraphs E3.1.1.2., E3.1.1.3. and E3.1.1.4., an appropriate reference stamped on the first page of the contract shall draw the attention of the policyholder to any restrictions by reason of Military Service or military occupational specialty.  The reference shall describe any extra premium charges and any variations in the amount of death benefit or premium based upon the length of time the contract has been in force.

E3.1.3.  Variable life insurance products may be offered provided they meet the criteria of the appropriate insurance regulatory agency and the Securities and Exchange Commission.

E3.1.4.  Insurance products shall not be marketed or sold disguised as investments.  If there is a savings component to an insurance product, the agent shall provide the customer written documentation, which clearly explains how much of the premium goes to the savings component per year broken down over the life of the policy.  This document must also show the total amount per year allocated to insurance premiums.  The customer must be provided a copy of this document that is signed by the insurance agent.

E3.2.  SALE OF SECURITIES

E3.2.1.  All securities must be registered with the Securities and Exchange Commission.

E3.2.2.  All sales of securities must comply with the appropriate Securities and Exchange Commission regulations.

E3.2.3.  All securities representatives must apply to the commander of the installation on which they desire to solicit the sale of securities for permission to solicit.

E3.2.4.  Where the accredited insurer's policy permits, an overseas accredited life insurance agent—if duly qualified to engage in security activities either as a registered representative of the National Association of Securities Dealers or as an associate of a broker or dealer registered with the Securities and Exchange Commission—may offer life insurance and securities for sale simultaneously.  In cases of commingled sales, the allotment of pay for the purchase of securities cannot be made to the insurer.

E3.3.  USE OF THE ALLOTMENT OF PAY SYSTEM

E3.3.1.  Allotments of military pay for life insurance products shall be made in accordance with Reference (o).

E3.3.2.  For personnel in pay grades E-4 and below, in order to obtain financial counseling, at least seven calendar days shall elapse between the signing of a life insurance application and the certification of a military pay allotment for any supplemental commercial life insurance. Installation Finance Officers are responsible for ensuring this seven-day cooling-off period is monitored and enforced.  The purchaser's commanding officer may grant a waiver of the seven-day cooling-off period requirement for good cause, such as the purchaser's imminent deployment or permanent change of station.

E3.4. <u>ASSOCIATIONS – GENERAL</u>

The recent growth and general acceptability of quasi-military associations offering various insurance plans to military personnel are acknowledged. Some associations are not organized within the supervision of insurance laws of either a State or the Federal Government. While some are organized for profit, others function as nonprofit associations under Internal Revenue Service regulations. Regardless of the manner in which insurance is offered to members, the management of the association is responsible for complying fully with the policies contained in this Instruction.

*DoDI 1344.07, March 30, 2006*

## E4. ENCLOSURE 4

## THE OVERSEAS LIFE INSURANCE REGISTRATION PROGRAM

### E4.1. REGISTRATION CRITERIA

E4.1.1. Initial Registration

E4.1.1.1. Insurers must demonstrate continuous successful operation in the life insurance business for a period of not less than 5 years on December 31 of the year preceding the date of filing the application.

E4.1.1.2. Insurers must be listed in Best's Life-Health Insurance Reports and be assigned a rating of B+ (Very Good) or better for the business year preceding the Government's fiscal year for which registration is sought.

E4.1.2. Re-registration

E4.1.2.1. Insurers must demonstrate continuous successful operation in the life insurance business, as described in paragraph E4.1.1.1.

E4.1.2.2. Insurers must retain a Best's rating of B+ or better, as described in subparagraph E4.1.1.2.

E4.1.2.3. Insurers must demonstrate a record of compliance with the policies found in this Instruction. .

E4.1.3. Waiver Provisions. Waivers of the initial registration or re-registration provisions shall be considered for those insurers demonstrating substantial compliance with the aforementioned criteria.

### E4.2. APPLICATION INSTRUCTIONS

E4.2.1. Applications Filed Annually. Insurers must apply by June 30 of each year for solicitation privileges on overseas U.S. military installations for the next fiscal year beginning October 1. Applications e-mailed, faxed, or postmarked after June 30 shall not be considered.

E4.2.2. Application Prerequisites. A letter of application, signed by the President, Vice President, or designated official of the insurance company shall be forwarded to the Principal Deputy Under Secretary of Defense (Personnel and Readiness), Attention: Morale, Welfare and Recreation (MWR) Policy Directorate, 4000 Defense, Pentagon, Washington, DC 20301-4000. The registration criteria in paragraph E4.1.1. or E4.1.2., above, must be met to satisfy application prerequisites. The letter shall contain the information set forth below, submitted in the order listed. Where criteria are not applicable, the letter shall so state.

E4.2.2.1. The overseas Combatant Commands (e.g., U.S. European Command, U.S. Pacific Command, U.S. Central Command, and U.S. Southern Command) where the company presently solicits, or plans to solicit, on U.S. military installations.

E4.2.2.2. A statement that the company has complied with, or shall comply with, the applicable laws of the country or countries wherein it proposes to solicit. "Laws of the country" means all national, provincial, city, or county laws or ordinances of any country, as applicable.

E4.2.2.3. A statement that the products to be offered for sale conform to the standards prescribed in Enclosure 3 and contain only the standard provisions such as those prescribed by the laws of the State where the company's headquarters are located.

E4.2.2.4. A statement that the company shall assume full responsibility for the acts of its agents with respect to solicitation. If warranted, the number of agents may be limited by the overseas command concerned.

E4.2.2.5. A statement that the company shall only use agents who have been licensed by the appropriate State and registered by the overseas command concerned to sell to DoD personnel on DoD installations.

E4.2.2.6. Any explanatory or supplemental comments that shall assist in evaluating the application.

E4.2.2.7. If the Department of Defense requires facts or statistics beyond those normally involved in registration, the company shall make separate arrangements to provide them.

E4.2.2.8. A statement that the company's general agent and other registered agents are appointed in accordance with the prerequisites established in section E4.3.

E4.2.3. If a company is a life insurance company subsidiary, it must be registered separately on its own merits.

E4.3. <u>AGENT REQUIREMENTS</u>

The overseas Combatant Commanders shall apply the following principles in registering agents:

E4.3.1. An agent must possess a current State license. This requirement may be waived for a registered agent continuously residing and successfully selling life insurance in foreign areas, who, through no fault of his or her own, due to State law (or regulation) governing domicile requirements, or requiring that the agent's company be licensed to do business in that State, forfeits eligibility for a State license. The request for a waiver shall contain the name of the State or jurisdiction that would not renew the agent's license.

E4.3.2.  General agents and agents may represent only one registered commercial insurance company.  This principle may be waived by the overseas Combatant Commander if multiple representations are in the best interest of DoD personnel.

E4.3.3.  An agent must have at least 1 year of successful life insurance underwriting experience in the United States or its territories, generally within the 5 years preceding the date of application, in order to be approved for overseas solicitation.

E4.3.4.  The overseas Combatant Commanders may exercise further agent control procedures as necessary.

E4.3.5.  An agent, once registered in an overseas area, may not change affiliation from the staff of one general agent to another and retain registration, unless the previous employer certifies in writing that the release is without justifiable prejudice.  Overseas Combatant Commanders  will have final authority to determine justifiable prejudice.  Indebtedness of an agent to a previous employer is an example of justifiable prejudice.

E4.4.  ANNOUNCEMENT OF REGISTRATION

E4.4.1.  Registration by the Department of Defense upon annual applications of insurers shall be announced as soon as practicable by notice to each applicant and by a list released annually in September to the appropriate overseas Combatant Commanders.  Approval does not constitute DoD endorsement of the insurer or its products.  Any advertising by insurers or verbal representation by its agents, which suggests such endorsement, is prohibited.

E4.4.2.  In the event registration is denied, specific reasons for the denial shall be provided to the applicant.

E4.4.2.1.  The insurer shall have 30 days from the receipt of notification of denial of registration (sent certified mail, return receipt requested) in which to request reconsideration of the original decision.  This request must be in writing and accompanied by substantiating data or information in rebuttal of the specific reasons upon which the denial was based.

E4.4.2.2.  Action by the Office of the PDUSD(P&R) on a request for reconsideration is final.

E4.4.2.3.  An applicant that is presently registered as an insurer shall have 90 calendar days from final action denying registration in which to close operations.

E4.4.3.  Upon receiving an annual letter approving registration, each company shall send to the applicable overseas Combatant Commander a verified list of agents currently registered for overseas solicitation.  Where applicable, the company shall also include the names and prior military affiliation of new agents for whom original registration and permission to solicit on base is requested.  Insurers initially registered shall be furnished instructions by the Department of Defense for agent registration procedures in overseas areas.

E4.4.4.  Material changes affecting the corporate status and financial condition of the company that occur during the fiscal year of registration must be reported to the MWR Policy Directorate at the address in paragraph E4.2.2 as they occur.

E4.4.4.1.  The Office of the PDUSD(P&R) reserves the right to terminate registration if such material changes appear to substantially affect the financial and operational standards described in section E4.1. on which registration was based.

E4.4.4.2.  Failure to report such material changes may result in termination of registration regardless of how it affects the standards.

E4.4.5.  If an analysis of information furnished by the company indicates that unfavorable trends are developing that could adversely affect its future operations, the Office of the PDUSD(P&R) may, at its option, bring such matters to the attention of the company and request a statement as to what action, if any, is considered to deal with such unfavorable trends.

DoDI 1344.07, March 30, 2006

E5.  ENCLOSURE 5

PERSONAL COMMERCIAL SOLICITATION EVALUATION

| PERSONAL COMMERCIAL SOLICITATION EVALUATION | | | |
|---|---|---|---|
| **PRIVACY ACT STATEMENT** | | | |

**AUTHORITY:** Section 301 of Title 5 U.S.C.

**PRINCIPAL PURPOSE(S):** Information on this form will be used to document the experience with the sales representative who provides the Service member with that evaluation.  This information will be maintained at the installation level.  It may be forwarded to officials within the Department of Defense responsible for oversight of personal commercial solicitation practices if further action is required.  These officials may need to make contact concerning the solicitation described in questions 2, 3, and 4.  Service member response will help ensure sales representatives conduct themselves fairly and in accordance with DoD Instruction 1344.7.  This information will be maintained as part of a case file in the event proceedings are considered necessary to deny or withdraw permission for the sales representative and/or the company to solicit on one or more installations.

**ROUTINE USE(S):**  None.

S A M P L E

**DISCLOSURE:**  Voluntary.  There is no consequence to the Service member for not completing this evaluation.

Please take a moment to respond to the following questions concerning your experience with the sales representative who provided you this evaluation.  Your response will help ensure sales representatives conduct themselves fairly and according to the policies outlined in DoD Instruction 1344.7.
When you have completed this evaluation, please send it to the Installation Commander or his/her designated representative.  Please do not give the completed evaluation back to the sales representative to mail for you.

| 1.  SALES REPRESENTATIVE WHO CONTACTED YOU AND HIS OR HER COMPANY | | | |
|---|---|---|---|
| **a.  NAME OF SALES REPRESENTATIVE** | **b.  COMPANY NAME** | | |
| Harry Cotter | All American Life Insurance Company | | |

| 2.  MAKING THE APPOINTMENT *(Mark (X) "Yes" if any of the following are true)* | YES | NO |
|---|---|---|
| a.  The sales representative <u>failed</u> to make an appointment in advance to see me. | X | |
| b.  The <u>initial</u> contact to schedule an appointment occurred <u>while I was on duty</u> (during normal duty hours). | | X |
| c.  My <u>initial</u> contact with the sales representative was in response to a notice in an official installation bulletin, marquee, announcement or newsletter that said he or she would be on the installation during a specific time or at a specific place. | | X |
| d.  A superior in my chain of command advised or required me to meet with the sales representative. | X | |
| e.  The sales representative made <u>initial</u> contact with me via a government phone, fax, or computer. | | X |

| 3.  TIME AND PLACE OF THE APPOINTMENT *(Mark (X) "Yes" if any of the following are true)* | YES | NO |
|---|---|---|
| a.  The sales presentation took place on the installation <u>while I was on duty</u> (during normal duty hours). | X | |
| b.  The sales presentation took place during a mandatory group meeting with other DoD personnel or as part of a military service sponsored financial education program. | | X |
| c.  The sales presentation took place in an unauthorized or restricted area. | X | |
| d.  The sales representative used an on-base facility as a showroom to display his or her product or services.  (This does not include displays conducted by military family members in their on-base residence.) | | X |

| 4.  CONDUCT DURING THE APPOINTMENT *(Mark (X) "Yes" if any of the following are true)* | YES | NO |
|---|---|---|
| a.  I was unduly pressured to buy the product or service. | | X |
| b.  I was not given the adequate facts, or was induced to purchase based on factors other than the merits of the product or service. | | X |
| c.  I was offered an incentive to meet with the sales representative, purchase the product or service, or drop a competing offer. | X | |
| d.  The sales representative is a DoD employee of senior rank. | | X |
| e.  The sales representative implied that he or she is sponsored or endorsed by the military, the installation or my unit.  (For example, the representative used an official or unofficial title such as "unit advisor" or "installation consultant.") | X | |
| f.  The sales representative had a military pay allotment or direct deposit form in his/her possession, or requested "MyPay" account access or PIN number. | | X |

| 5.  YOUR CONTACT INFORMATION | | |
|---|---|---|
| **a.  NAME** *(Last, First, Middle Initial)* | **b.  HOME TELEPHONE NUMBER** *(Include area code)* | **c.  WORK TELEPHONE NUMBER** *(Include area code)* |
| Hargrove, Harold H. | (901) 336-1001 | (901) 436-8988 |
| **d.  E-MAIL ADDRESS** hhh@coastal.com | **e.  UNIT ADDRESS** 329 Inf Bn (ABN), Fort Bragg, NC 28307 | |

**DD FORM 2885, APR 2006**                                                      FormFlow/Adobe Professional 6.0

23                                                   ENCLOSURE 5

**Army Regulation 210–7**

Installations

# Commercial Solicitation on Army Installations

Headquarters
Department of the Army
Washington, DC
22 April 1986

**UNCLASSIFIED**

# *SUMMARY of CHANGE*

AR 210-7
Commercial Solicitation on Army Installations

This is a transitional reprint of this publication which places it in the UPDATE
format. All previously published permanent numbered changes have been
incorporated into the text.

o

o

Headquarters
Department of the Army
Washington, DC
22 April 1986

**\*Army Regulation 210–7**

**Effective 22 May 1986**

Installations

## Commercial Solicitation on Army Installations

By Order of the Secretary of the Army:

BERNARD W. ROGERS
*General, United States Army*
*Chief of Staff*

Official:

J. C. PENNINGTON
*Brigadier General, United States Army*
*The Adjutant General*

**History.** The original form of this regulation was published on 15 December 1978. Since that time, Changes 1 and 2 have been issued to amend the original, and these changes remain in effect. This UPDATE issue is a reprint of the original regulation with the changes incorporated directly into the text.

**Summary.** This revision includes the provisions of the revisions of DOD Directive 1344.1 and DOD Directive 1344.7. It also prescribes procedures for controlling solicitation on Army installations. As used throughout this regulation, the words "he," and"him," and "his" include both the masculine and feminine genders unless otherwise specifically stated.

**Applicability.** See paragraph 1–2.

**Proponent and exception authority.** Not applicable

**Army management control process. Supplementation.** Local supplementation of this regulation is permitted, but is not required. If supplements are issued, Army Staff agencies and major Army commands will furnish one copy of each to HQDA (DAAG–PSI) Alexandria, VA 22331; other commands will furnish one copy of each to the next higher headquarters.

**Interim changes.** Users of this regulation will not implement interim changes unless the change document has been authenticated by The Adjutant General. (Interim changes expire 1 year after publication date.) If a formal printed change is not received by the time the interim change expires, users will destroy the interim change.

**Suggested improvements.** The proponent agency of this regulation is The Adjutant General Center. Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) direct to HQDA (DAAG–PSI) WASH DC 20314.

**Distribution.** To be distributed in accordance with DA Form 12–9AR requirements for AR, Installations. Active Army, C; ARNG, D; USAR, D.

**Contents** (Listed by paragraph and page number)

**Chapter 1**
**General,** *page 1*
Purpose • 1–1, *page 1*
Applicability • 1–2, *page 1*
Related laws and regulations • 1–3, *page 1*
Explanation of terms • 1–4, *page 1*

**Chapter 2**
**Basic Policy,** *page 2*
Regulatory requirements • 2–1, *page 2*
Solicitation • 2–2, *page 2*
Restrictions • 2–3, *page 2*
Licensing requirements • 2–4, *page 2*
Authorization to solicit • 2–5, *page 2*
Other transactions • 2–6, *page 3*
Granting solicitation privileges • 2–7, *page 3*
Supervision of on-post commercial activities • 2–8, *page 3*

\*This regulation supersedes AR 210–7, 4 January 1977 and DA message 151130Z, May 1978 subject: Interim Change to AR 210–7.

**UNCLASSIFIED**

**Contents—Continued**

Products and services offered in solicitation • 2–9, *page 4*
Advertising rules and educational programs • 2–10, *page 4*
Correspondence courses • 2–11, *page 4*
"Cooling off" period for door-to-door sales • 2–12, *page 5*

**Chapter 3**
**Insurance,** *page 5*

*Section I*
*Life Insurance, page 5*
Sound insurance underwriting and programming • 3–1, *page 5*
Command supervision • 3–2, *page 5*
Actions required by agents • 3–3, *page 6*
Life insurance policy content • 3–4, *page 6*
Minimum requirements for agents • 3–5, *page 6*
Application by companies to solicit on military installations in the United States, its territories, or the Commonwealth
  of Puerto Rico • 3–6, *page 7*
Applications by companies to solicit on installations in foreign countries • 3–7, *page 7*
Associations—general • 3–8, *page 7*
Use of the allotment of pay system • 3–9, *page 7*
Counseling • 3–10, *page 7*

*Section II*
*Automobile Insurance, page 8*
Motor vehicle liability insurance counseling • 3–11, *page 8*
Cooperation with State and local authorities • 3–12, *page 8*
Driver training programs • 3–13, *page 9*
Minimum requirements for automobile insurance policies • 3–14, *page 9*

**Chapter 4**
**Suspension or Denial of Solicitation Privileges,** *page 9*
Grounds for denial or suspension of privileges • 4–1, *page 9*
Factors in suspending solicitation privileges • 4–2, *page 10*
Preliminary investigation • 4–3, *page 10*
Suspension approval • 4–4, *page 10*
"Show-Cause" hearing • 4–5, *page 10*
Suspension action • 4–6, *page 10*
Suspension period • 4–7, *page 10*
Agents or companies with suspended solicitation privileges • 4–8, *page 10*
Exercise of "off limits" authority • 4–9, *page 11*

**Appendixes**

**A.**   , *page 12*

**B.**   Standards of Fairness, *page 12*

## Chapter 1
## General

### 1-1. Purpose
This regulation—

   *a.* Prescribes general policy on the solicitation and sale of all goods, services, and commodities, including all types of insurance, on military installations. These are sold or solicited by dealers, tradesmen, and their agents.

   *b.* Prescribes procedures for suspension of solicitation privileges.

   *c.* Provides for counseling assistance on consumer credit transactions.

   *d.* Prescribes policies and procedures for investigative and enforcement actions.

   *e.* Permits representatives of credit unions, banks, and approved non-profit associations to conduct national educational programs on—

   (1) Insurance, estate planning, savings, and budgeting, and

   (2) The protection and remedies afforded consumers under the Truth-in-Lending Act.

### 1-2. Applicability
   *a.* This regulation applies to—

   (1) All Department of the Army military and civilian personnel, including Army National Guard and Army Reserve personnel on active duty or annual training.

   (2) Individuals seeking to conduct commercial solicitation on military installations, including controlled housing areas. They will also be governed by regulations and controls of the local commander and, in overseas areas, by regulations of the unified or specified commander. They must also observe applicable laws, regulations, and agreements of the host country.

   *b.* The provisions of this regulation do not apply to—

   (1) Commercial companies that furnish services to military installations (such as deliveries of milk, bread, and laundry) when they are authorized by the installation commander.

   (2) An individual who sells his own personal property or privately owned dwelling.

### 1-3. Related laws and regulations
   *a.* Truth-in-Lending Act (15 USC 1601).

   *b.* AR 210-24 (Credit Unions).

   *c.* AR 60-10 (Exchange Service—General Policies).

   *d.* AR 340-17 (Release of Information and Records from Army files).

   *e.* AR 340-21 (The Army Privacy Program).

   *f.* AR 600-50 (Standards of Conduct for Department of the Army personnel).

   *g.* AR 608-1 (Army Community Service Program).

   *h.* AR 15-6 (Procedure for Investigating Officers and Boards of Officers Conducting Investigations).

   *i.* AR 190-24 (Armed Forces Disciplinary Control Boards and off Installation Military Enforcement).

   *j.* AR 37-104-3 (Military Pay and Allowance Procedures: Joint Uniform Military Pay System).

   *k.* 12 CFR 226 (Federal Reserve Regulation Z).

   *l.* 16 CFR (Door-to-Door Sales).

### 1-4. Explanation of terms
   *a. Agent.* Anyone who solicits the ordering or purchasing of goods, services, or commodities in exchange for money. "Agent" includes an individual who receives remuneration as a salesman for an insurer or whose remuneration is dependent on volume of sales or the making of sales.

   *b. Association.* Any organization which has been established, whether or not the word "association" appears in the title, and which—

   (1) Is composed of and exclusively serves members of the Armed Forces of the United States (on active duty, in a Reserve status, in a retired status, or individuals who entered into these associations while on active duty) and their dependents.

   (2) Offers its members life insurance coverage, either as part of the membership dues, or as a separately purchased plan made available through an insurance carrier or the association as a self-insurer, or both.

   *c. Solicitation.* The conduct of any private business, including the offering and sale of insurance on a military installation, whether initiated by the seller or the buyer. (Solicitation on installations is a privilege as distinguished from a right, and its control is a responsibility vested in the installation commander, subject to compliance with applicable regulations.)

   *d. Door-to-door solicitation.* A sales method whereby an agent proceeds randomly or selectively from household to

household without specific prior appointments or invitations. Door-to-door solicitation is not permitted on Army installations.

*e. Specific appointment.* A prearranged appointment that has been agreed upon by both parties and is definite as to place and time.

*f. Insurer.* Any company or association engaged in the business of selling insurance policies to Department of Defense (DOD) personnel.

*g. Insurance carrier.* An insurance company issuing insurance through an association or reinsuring or coinsuring such insurance.

*h. Insurance policy.* A policy or certificate of insurance issued by an insurer or evidence of insurance coverage issued by a self-insured association.

*i. DOD personnel.* Unless stated otherwise, such personnel means all active duty officer and enlisted members, and civilian employees of the Armed Forces. This includes Government employees of all the offices, agencies, and departments carrying on functions on a Defense installation, including non-appropriated fund instrumentalities.

## Chapter 2
## Basic Policy

### 2–1. Regulatory requirements
Commanders may issue regulations governing solicitation within their commands and on their installations. These regulations will avoid discriminatory requirements which could eliminate or restrict competition. When there is a clear need to prescribe more restrictive requirements for solicitation than those in this regulation or the regulations of the major commander, these additional requirements or restrictions must first be reviewed and confirmed by The Adjutant General Center (DAAG–PSI), or by the oversea commander.

### 2–2. Solicitation
The installation commanders may permit solicitation and transaction of commercial business on military installations. These solicitations and transactions must conform to installation regulations (CONUS and overseas) and must not interfere with military activities. No person may enter an installation and transact commercial business as a matter of right.

### 2–3. Restrictions
To maintain discipline; protect property; and safeguard the health, morale, and welfare of his personnel, the installation commander may impose reasonable restrictions on the character and conduct of commercial activities. Members of the Armed Forces must not be subjected to fraudulent, usurious, or unethical business practices. Reasonable and consistent standards must be applied to each company and its agents in their conduct of commercial transactions on the installation.

### 2–4. Licensing requirements
To transact personal commercial business on military installations in the United States, its territories, and the Commonwealth of Puerto Rico, individuals must present, on demand, to the installation commander, or his designee, documentary evidence that the company and its agents meet the licensing requirements of the state in which the installation is located. They must also meet any other applicable regulatory requirements imposed by civil authorities (Federal, State, county, or municipality). For ease of administration, the installation commander will issue a temporary permit to agents who meet these requirements.

### 2–5. Authorization to solicit
*a.* Solicitation must be authorized by the installation commander. A specific appointment must be made with the individual and must be conducted in family quarters or in other areas designated by the installation commander. Before issuing a permit to solicit, the commander will require and review a statement of past employment. The commander will also determine, if practicable, whether the agent is employed by a reputable firm.

*b.* Certain companies seeking solicitation privileges on military installations may arrange personal demonstrations of their products at social gatherings and advise potential customers on their use. If these added services are provided, even though the merchandise sold by these companies is similar to that stocked by the post exchange, the installation commander may authorize solicitation privileges. Requests for this type of solicitation privilege will be coordinated with the local Army and Air Force Exchange Service representative. See paragraph 3–2, AR 60–10.

**2–6. Other transactions**

Commercial transactions with other than individuals (such as non-appropriated fund activities) are restricted to the office of the custodian of the specific activity. Business will be conducted during normal duty hours.

**2–7. Granting solicitation privileges**

*a.* Authorizations (permits) to solicit on Army installations will be in writing and will be valid for periods of 1 year or less.

*b.* Particular caution must be taken when granting solicitation permission. The impression that permission is official indorsement or that the Department of the Army favors, sponsors, or recommends the companies, agents, or the policies offered for sale must not be conveyed. As continuing policy, the Department of the Army does not indorse any seller or product.

**2–8. Supervision of on-post commercial activities**

*a. General.*

(1) Installation commanders will ensure that all agents are given equal opportunity for interviews, by appointment, at the designated areas.

(2) DOD personnel will not act in any official or business capacity, either directly or indirectly, as liaison with agents to arrange appointments.

(3) Home address of members of the command or unit will not be given to commercial enterprises or individuals engaged in commercial solicitation, except when required by AR 340–17 and AR 340–21. The written consent of the individual must be obtained first.

*b. Hours and location for solicitation.*

(1) Military personnel and their dependents will be solicited individually, by specific appointment, and at hours designated by the installation commander or his designee. Appointments will not interfere with any military duty. Door-to-door solicitation without a prior appointment, including solicitation by personnel whose ultimate purpose is to obtain sales (e.g., soliciting future appointments), is prohibited. Solicitors may contact prospective clients initially by methods such as advertising, direct mail, and telephone.

(2) Commanders will provide one or more appropriate locations on the installation where agents may interview prospective purchasers. If space and other factors dictate limiting the number of agents who may use designated interviewing areas, the installation commander may publish policy covering this matter.

*c. Regulations to be read by solicitors.* A conspicuous notice of installation regulations will be posted in a form and a place easily accessible to all those conducting on-post commercial activities. Each agent authorized to solicit must read this notice and appropriate installation regulations. Copies will be made available on installations. When practicable, as determined by the installation commander, persons conducting on-base commercial activities will be furnished a copy of the applicable regulations. Each agent seeking a permit must acknowledge, in writing, that he has read the regulations, understands them, and further understands that any violation or noncompliance may result in suspension of the solicitation privilege for himself, his employer, or both.

*d. Items available to service members.* Books and other items which can be obtained through the post exchange, the post library, or are available free, and which are also offered for sale by agents, should be made known to service members. Service members should know that they may borrow or obtain these items, possibly at lower cost.

*e. Third-party counseling.* Each member who wishes to know more about any product, service, insurance, or other item which may be offered to him by an agent will be provided disinterested, third-party counseling of a general nature when possible.

*f. Forbidden solicitation practices.* Installation commanders will prohibit the following:

(1) Solicitation during enlistment or induction processing or during basic combat training, and within the first half of the one station unit training cycle.

(2) Solicitation of "mass," group, or "captive" audiences.

(3) Making appointments with or soliciting of military personnel who are in an "on-duty" status.

(4) Soliciting without an appointment in areas used for housing or processing transient personnel, or soliciting in barracks areas used as quarters.

(5) Use of official identification cards by retired or Reserve members of the Armed Forces to gain access to military installations to solicit.

(6) Offering of false, unfair, improper, or deceptive inducements to purchase or trade.

(7) Offering rebates to promote transaction or to eliminate competition. (Credit union interest refunds to borrowers are not considered a prohibited rebate.)

(8) Use of any manipulative, deceptive, or fraudulent device, scheme, or artifice, including misleading advertising and sales literature.

(9) Any oral or written representations which suggest or appear that the Department of the Army sponsors or indorses the company or its agents, or the goods, services, and commodities offered for sale.

(10) Commercial solicitation by an active duty member of the Armed Forces of another member who is junior in rank or grade, at any time, on or off the military installation (AR 600–50).

(11) Entry into any unauthorized or restricted area.

(12) Assignment of desk space for interviews, except for specific, prearranged appointments. During appointments, the agent must not display desk or other signs announcing the name of the company or product affiliation.

(13) Use of the "Daily Bulletin" or any other notice, official or unofficial, announcing the presence of an agent and his availability.

(14) Distribution of literature other than to the person being interviewed.

(15) Wearing of name tags that include the name of the company or product that the agent represents.

(16) Offering of financial benefit or other valuable or desirable favors to military or civilian personnel to help or encourage sales transactions. This does not include advertising material for prospective purchasers (such as pens, pencils, wallets, and notebooks, normally with a value of $1 or less).

(17) Use of any portion of installation facilities, to include quarters, as a showroom or store for the sale of goods or services, except as specifically authorized by regulations governing the operations of exchanges, commissaries, nonappropriated fund instrumentalities, and private organizations. This is not intended to preclude normal home enterprises, providing State and local laws are complied with.

(18) Advertisements citing addresses or telephone numbers of commercial sales activities conducted on the installation.

*g. Business reply system.* Agents who desire to use a business reply card system will include the information on the card which a military member can complete to indicate where and when the member can meet the agent to discuss the subject. The meeting place should be that established in accordance with *b*(2), above, if the meeting is to be on the installation. This procedure should assist in removing any impression that the agent or his company is approved by the Department of the Army. It should further prevent an undesirable situation (e.g., military personnel paged on a public address system or called by a unit runner to report to the orderly room).

## 2–9. Products and services offered in solicitation
Products and services, including life insurance, offered and sold on Army installations must comply with the laws of the States (and other civil jurisdictions) in which the installations are located. If a dispute or complaint arises, the applicable State will make the determination (para 2–4).

## 2–10. Advertising rules and educational programs
*a.* The Department of the Army expects that commercial enterprises soliciting military personnel through advertisements appearing in unofficial military publications will voluntarily observe the highest business ethics in describing both the goods, services, and commodities and the terms of the sale (such as guarantees and warranties). If not, the publisher of the military publication will request the advertiser to observe them. The advertising of credit will conform to the provisions of the Truth-in-Lending Act, as implemented by Regulation Z, published by the Federal Reserve Board (12 Code of Federal Regulations 226).

*b.* Commanders will provide appropriate information and education programs to provide members of the Army with information pertaining to the conduct of their personal commercial affairs (e.g., the protection and remedies offered consumers under the Truth-in-Lending Act, insurance, Government benefits, savings, estate planning, and budgeting). The services of representatives of credit unions, banks, and those nonprofit military associations (provided such associations are not underwritten by a commercial insurance company) approved by HQDA may be used for this purpose. Under no circumstance will the service of commercial agents, including loan, finance, insurance, or investment companies, be used for this purpose. Educational materials prepared or presented by outside organizations expert in this field may be adapted or used provided such material is approved by HQDA. Presentations by those approved organizations will only be conducted at the express request of the installation commander concerned.

*c.* When available resources permit, commanders will make qualified personnel and facilities available for individual counseling on loans, contracts, and consumer transactions to—

(1) Encourage thrift and financial responsibility.

(2) Promote a better understanding of the wise use of credit.

(3) Encourage the service member to resist the temptation to buy beyond his means (AR 608–1).

*d.* Individual military members will be encouraged to seek advice from a legal assistance officer or from his own lawyer before making substantial loan or credit commitments.

*e.* Commanders will provide advice and guidance to military personnel who have a complaint under the Truth-in-Lending Act or who allege a criminal violation of its provisions, including referral to the appropriate regulatory agency for processing of the complaint.

## 2–11. Correspondence courses
Although the commercial correspondence course is a long-established, officially recognized, and useful form of

education, occasionally a potential problem may exist because of sales personnel who follow unscrupulous or unethical practices.

*a. General policy.*

(1) The installation solicitation control officer may request the installation education officer to help coordinate all requests for on-post solicitation for sale of correspondence courses.

(2) Education officers and solicitation control officers must not appear to indorse any particular commercial activity.

(3) On-post solicitation will not be in the education center. The center will not be used for meeting, counseling, or soliciting enrollments in private correspondence programs.

(4) Any discussions or correspondence with organizations selling these courses will not include information which assesses the sales potential of the military population or its educational needs.

(5) Catalogs or bulletins that are provided by private correspondence schools may be maintained and displayed in education centers if—

*(a)* The school is approved for Veterans Administration educational benefits.

*(b)* Interested individuals are made aware that the Army does not indorse any particular school.

*b. Responsibility of the education officer.* When a service member requests the processing of Veterans Administration forms for the use of G.I. Bill educational benefits in correspondence programs, the education officer, or his representative, must certify on the forms that the member has been adequately counseled. The counselor will determine the individual's aptitude for the course. Additionally, he will determine the difference in cost between the commercial course and similar courses available at or through the education center.

*c. Responsibility of the solicitation officer.* The solicitation control officer will make the decision to grant or deny solicitation privileges for selling correspondence courses. His decision will be based on the recommendation of the education officer and other requirements in this regulation.

## 2–12. "Cooling off" period for door-to-door sales

A Federal Trade Commission Rule (16 CFR 429), effective 7 June 1974, pertains to a cooling off period for door-to-door sales. The rule applies to any sale, lease, or rental of consumer goods or services with a purchase price of $25 or more, whether under single or multiple contracts, in which the seller or business representative personally solicits the sale, including those in response to or following an invitation by the buyer, and the buyer's agreement or offer to purchase is made at a place other than the place of business of the seller. The purpose of the law is to allow the consumer the right to cancel a transaction at any time prior to midnight of the third business day after the date of the transaction. When any door-to-door sale or transaction takes place anywhere, on or off the installation (other than the seller's place of business), the consumer must be provided with a full and complete receipt or copy of a contract pertaining to the sale at the time of its execution which contains the "cancellation statements" as required by the FTC rule.

## Chapter 3
## Insurance

## Section I
## Life Insurance

### 3–1. Sound insurance underwriting and programming

The Department of the Army encourages the acquisition of a sound insurance program that is suitably underwritten to meet the varying needs of the individual and within his financial means. Accordingly, insurance agents may conduct personal business on an installation, when feasible, with disinterested third-party counseling provided, interviewing hours set aside, and facilities supplied. However, the privilege of insurance solicitation on installations is conditioned on full compliance with this regulation and on the clear understanding that permission is not indorsement of the company or the policies offered for sale.

### 3–2. Command supervision

*a.* All insurance business conducted on Army installation will be by appointment. When setting up the appointment, insurance agents must identify themselves to the prospective purchaser as an agent for a specific insurance company.

*b.* Department of Defense personnel are expressly prohibited from representing any insurance company or dealing either directly or indirectly with any insurance company or any recognized representative of an insurance company as an agent or in any official or business capacity for the solicitation of insurance to personnel on a military installation with or without compensation.

*c.* In addition to the forbidden practices (para 2–8*f*), installation commanders will prohibit the following:

(1) The use of a commercial insurance agent as a participant in any military-sponsored education or orientation program.

(2) The designation or announcement of any agent as "Battalion Insurance Advisor," "Unit Insurance Counselor," "SGLI Conversion Consultant," or similar quasi-official titles.

## 3–3. Actions required by agents

*a.* The agent must know that—

(1) Soldiers to be solicited are in grades E–1, E–2, or E–3, and

(2) The solicitation of these members is restricted to specified times and locations designated by the installation commander.

*b.* Agents must leave information on the policy applied for with each member in grades E–1, E–2, and E–3 who applies for insurance and the unit insurance officer or counselor. Agents must complete DA Form 2056 (Commercial Insurance Solicitation Record). Blank DA Forms 2056 (not allotment forms) will be available to insurance agents on request. In the "Remarks" section of DA Form 2056, agents will include all pertinent information and a clear statement that dividends are not guaranteed if the presentation refers to dividends.

## 3–4. Life insurance policy content

Insurance policies offered and sold on Army installations must—

*a.* Comply with the insurance laws of the States or country in which the installations are located. The applicable State insurance commissioner will determine such compliance if there is a dispute or complaint.

*b.* Contain no restrictions because of military service or military occupational specialty of the insured, unless restrictions are clearly indicated on the face of the policy.

*c.* Plainly indicate any extra premium charges imposed because of military service or military occupational specialty.

*d.* Not vary in the amount of death benefit or premium based on the length of time the policy has been in force, unless it is clearly described therein.

*e.* For purposes of *b* through *d* above, be stamped with an appropriate reference on the face of the policy to focus attention on any extra premium charges imposed and on any variations in the amount of death benefit or premium based on the length of time the policy has been in force.

*f.* Variable life insurance policies may be offered provided they meet the criteria of the appropriate insurance regulatory agency and the Securities and Exchange Commission.

*g.* Show only the actual premiums payable for life insurance coverage.

## 3–5. Minimum requirements for agents

*a.* In the United States, its territories, and the Commonwealth of Puerto Rico. Agents may be authorized to solicit on an installation provided—

(1) Both the company and its agents are licensed in the State in which the installation is located. "State" as it pertains to political jurisdictions includes the 50 states, territories, and the Commonwealth of Puerto Rico.

(2) The application to solicit is made by an accredited company (para 3–6).

*b.* On Army military installation in foreign areas.

(1) An agent may solicit business on US military installations in foreign areas if—

*(a)* The company he represents has been accredited by DOD.

*(b)* His name is on the official list of accredited agents maintained by the applicable major command.

*(c)* His employer, the company, has obtained clearance for him from the appropriate oversea commanders; and

*(d)* The commanding officer of the military installation on which he desires to solicit has granted him permission.

(2) To be employed for oversea solicitation and designated as an accredited agent, agents must have at least 1 year of successful life insurance underwriting in the United States or its territories. Generally, this is within the 5 years preceding the date of application.

(3) General agents and agents will represent only one accredited commercial insurance company. The oversea commander may waive this requirement if multiple representation can be proven to be in the best interest of DOD personnel.

(4) An agent must possess a current State license. The oversea commander may waive this requirement on behalf of an accredited agent who has been continuously residing and successfully selling life insurance in foreign areas and forfeits his eligibility for a State license, through no fault of his own, due to the operation of State law or regulation governing domicile requirements, or requiring that the agent's company be licensed to do business in that State. The request for a waiver will contain the name of the State and jurisdiction which would not renew the agent's license.

(5) An agent, once accredited in an overseas area, may not change his affiliation from the staff of one general agent to another, unless the losing company certifies, in writing, that the release is without justifiable prejudice. Unified commanders will have final authority to determine justifiable prejudice.

(6) Where the accredited insurer's policy permits, an oversea accredited life insurance agent, if duly qualified to engage in security activities either as a registered representative of a member of the National Association of Securities Dealers or an associated person of a broker/dealer registered with the Securities and Exchange Commission only, may offer life insurance and securities for sale simultaneously. In cases of commingled sales, the allotment of pay for the purchase of securities cannot be made to the insurer.

(7) Oversea commanders will exercise further agent control procedures as necessary.

## 3–6. Application by companies to solicit on military installations in the United States, its territories, or the Commonwealth of Puerto Rico

Before a company may be accredited to solicit on a military installation, the commander must receive a letter of application, signed by the company's president or vice president. It must be understood that a knowing and willful false statement is punishable by fine or imprisonment (18 USC 1001). The letter of application will—

*a.* Report the States in which the company is qualified and licensed to sell insurance.

*b.* Give the name, complete address, and telephone number of each agent who will solicit on the installation if approval is granted; the State in which licensed; the date of licensing and the expiration date; and a statement of agreement to report all future additions and separations of agents employed for solicitation on the installation.

*c.* List all policies and their form numbers that are to be offered for purchase on the installation. (Commanders will not require companies to furnish sample insurance policies since this is an unnecessary expenditure of time and money, both to the installation and to the insurance company, and serves no practical purpose.)

*d.* Assure that only the policies listed on the application will be offered for purchase and that these policies meet the requirements of paragraph 3–4.

*c.* Attest that—

(1) The privilege of soliciting the purchase of life insurance is not currently suspended or withdrawn from the company by any of the military departments.

(2) The privilege of soliciting the purchase of life insurance is not currently suspended or withdrawn by any Armed Forces installations from any of the agents named.

(3) The company and the agents named have proper and currently validated licenses as required by paragraph 3–5.

(4) The company assumes full responsibility for its agents complying with this regulation and with any regulations published by the installation commander.

## 3–7. Applications by companies to solicit on installations in foreign countries

*a.* Each May and June only, DOD accepts applications from commercial life insurance companies for accreditation to solicit the purchase of commercial life insurance on installations in foreign countries for the fiscal year beginning the following October.

*b.* Information about permission to solicit on installations outside the United States (exclusive of its territories and the Commonwealth of Puerto Rico) is contained in instructions issued by DOD. Applications and any correspondence relating thereto should be addressed to Assistant Secretary of Defense (Manpower, Reserve Affairs, and Logistics), ATTN: Directorate, Personnel Services, ODASD(MPP), WASH DC 20301.

*c.* Advice of action taken by DOD is announced annually by letters sent to oversea commanders as soon as practicable after 15 September. The list of companies and agents may vary from year to year.

## 3–8. Associations—general

The recent growth of quasi-military associations offering various insurance plans to military personnel is recognized. Some associations are not organized within the supervision of insurance laws of either the Federal or State Government. While some are organized for profit, others function as nonprofit associations under Internal Revenue Service regulations. Regardless of how insurance plans are offered to members, the management of the association is responsible for assuring that all aspects of its insurance programs comply fully with the instructions of this regulation.

## 3–9. Use of the allotment of pay system

*a.* Allotments of military pay will be made in accordance with AR 37–104–3. Allotments will not be made to an insurer for the purchase of a commingled sale (e.g., retirement plans, securities).

*b.* Under no circumstances will agents have allotment forms in their possession or attempt to assist or coordinate the administrative processing of such forms.

*c.* For personnel in grades E–1, E–2, and E–3, at least 7 days should elapse between the signing of a life insurance application or contract and the certification of an allotment. The purchaser's commanding officer may grant a waiver of this requirement for good cause, such as the purchaser's imminent permanent change of station.

## 3–10. Counseling

*a.* Commanders are responsible for the counseling of personnel under their command. An important aspect of counseling is to make certain that soldiers in grades E–1, E–2, and E–3 fully understand the business transaction into

which they are entering. Preferably, an officer will do the counseling. However, personnel designated to counsel are not expected to be technical experts in the field of life insurance. Counseling should be made available for all personnel.

b. Commanders of all echelons, down to and including separate battalions, and organizations or activities of comparable size and responsibility will designate individuals to serve as unit personal commercial affairs officers. One of the primary functions of these officers is to counsel (c. below).

c. The following are minimum requirements for counseling:

(1) Make certain that the member fully understands that he is entering a business transactions normally intended to cover a long time and usually involving a considerable amount of money.

(2) Obtain a copy of DA Form 2056 (para 3–3b) and make certain that the member understands that, while his life will be insured after his policy becomes effective, if he allows the policy to lapse, he will not recover more than the cash value at the time the policy lapsed. Be certain the member understands the cash value available to him at the stated intervals, if any. Particularly emphasize the relation between the cash values and the premiums paid during the early policy years.

(3) Impress on the member that the Army does not favor or recommend any particular agent or company, but that the privilege of solicitation is extended to agents in good standing.

(4) Impress on the member that—

(a) The allotment system is a convenience.

(b) Its use is permitted only to provide him with a ready means of guaranteeing that the insurance protection provided for his family will continue under adverse circumstances because of military service.

(c) It does not mean the Army recommends the insurance policy, the agent, or the company.

(d) Their purchase of insurance is purely a personal transaction between the member and the insurance company.

(5) Be sure that the member is fully aware of any restrictions or limitations in the policy, such as those described in paragraph 3–4b through d.

(6) Use DA Form 2056 in counseling personnel in grades E–1, E–2, and E–3 who purchase insurance on or off post and who desire to make premium payments by allotment. The dependency situation indicated in section II, DA Form 2056 should be reviewed, and the benefits which are available to the survivors of military personnel should be explained (DA Pam 608–2).

d. After the counseling (c above), the member will be instructed to see the counselor again at least 7 days from the date that he submits DA Form 2056. If the member returns and still desires the insurance, the counselor will sign and file DA Form 2056 in the battalion/separate company level file under file number 7–02. DA Form 1341 (JUMPS–Army Allotment Authorization) will be prepared and sent to the disbursing officer. If a soldier in grades E–1, E–2, or E–3 requests an allotment for life insurance purchased and in force for 6 months or more, or purchased before entering on active duty, the 7–day waiting period will not apply. For personnel in grades E–4 and above, there is no mandatory waiting period.

## Section II
## Automobile Insurance

### 3–11. Motor vehicle liability insurance counseling

a. All commanders are responsible for counseling personnel under their command on the purchase of motor vehicle liability insurance. Periodically they will publish information on driver responsibility under State and local laws. It should be thoroughly explained that—

(1) To satisfy judgments against an individual growing out of an automobile accident could possibly require the major portion of personal earnings for many years.

(2) Failure to provide means to settle damage claims for which found to be legally responsible reflects discredit on the Department of the Army.

b. The counselor will—

(1) Stress the importance of a safe driving record.

(2) Inform members that some insurers, and the assigned risk plans of many of the states, offer coverage with a substantial savings in premiums to individuals who have removed themselves from extra risk classifications requiring premium surcharges, by—

(a) Successfully completing driver training courses (para 3–13).

(b) Maintaining accident-free records which can be authenticated.

### 3–12. Cooperation with State and local authorities

a. Installation commanders will cooperate with State and local officials responsible for administering State and local laws and regulations on the insurance and operation of motor vehicles by requiring that—

(1) Personnel assigned to process motor vehicle liability insurance matters receive training and instruction in the requirements of this regulation;

(2) All correspondence and applications for accreditation and permission to solicit are promptly and courteously acted on; and

(3) The State Insurance Commissioner be advised of the names or office and telephone number and address of the element of each installation staff member responsible for insurance matters.

*b.* Cooperation will be extended to school officials, automobile associations, Armed Forces-State Traffic Safety Workshop Program, commercial private driver training course operators, and civic groups concerned with public highway safety.

*c.* Assistance in obtaining assigned risk insurance will be given to personnel, particularly young motor vehicle operators, who are otherwise unable to obtain automobile insurance coverage. Installation commanders will ensure the maintenance of good relations and liaison with State officials responsible for administering "assigned risk plans" and financial responsibility laws.

### 3–13. Driver training programs

Installation commanders are responsible for administering an effective driver training program to the extent of personnel and budgeting limitations. All commanders will make defensive driver, driver improvement, and remedial driver training available. The installation commander will make attendance at the program mandatory for problem drivers. (See AR 190–5).

### 3–14. Minimum requirements for automobile insurance policies

Policies sold on installations by both accepted and accredited insurers will meet all statutory and regulatory requirements of the State or host nation in which the installation is located. Policies will not be issued in amounts lower than the minimum limits prescribed by these authorities. In addition, policies will—

*a.* Clearly identify the name of the insurer and the full address.

(1) Applications without the name and address of the insurer underwriting the insurance may not be used; the names of sales or underwriting agents alone is not sufficient.

(2) Post office box addresses are not an acceptable address.

*b.* Provide bodily injury and property damage liability coverage for all drivers authorized by the named insured to operate the vehicle. Military indorsements, excluding persons other than the named insured, whether in the military or not, are not acceptable.

*c.* Not contain unusual limitations or restrictions, including, but not limited to, the following:

(1) Limitations specifying that coverage is afforded only when the insured vehicle is operated in the designated geographic areas in the United States (e.g., coverage applicable only on a military reservation). If the installation is located within the United States, the standard provision limiting coverage to the United States and Canada is acceptable.

(2) Coverage limited to exclude liability for bodily injury to passengers and guests if such a liability exists as a matter of law.

## Chapter 4
## Suspension or Denial of Solicitation Privileges

### 4–1. Grounds for denial or suspension of privileges

The installation commander will deny or revoke permission of a company and its agents to conduct commercial activities on the installation if it is in the best interests of the command. The grounds for taking these actions will include, but will not be limited to, the following:

*a.* Failure of a company to meet the licensing and other regulatory requirements prescribed in paragraph 2–4.

*b.* An agent or representative engaged in any of the solicitation practices prohibited by this regulation.

*c.* Substantiated adverse complaints or reports about the quality of the goods, services, or commodities and the manner in which they are offered for sale.

*d.* Personal misconduct by agents or representatives while on the military installation.

*e.* The possession of or any attempt to obtain allotment forms, or to assist or coordinate the administrative processing of such forms.

*f.* Knowing and willful violation of the Truth-in-Lending Act or Federal Reserve Regulation Z.

*g.* Failure to incorporate and abide by the Standards of Fairness policies (See the app.)

*h.* A history of two or more suspensions of an agent and/or company.

*i.* Continued solicitation when already under suspension.

*j.* False information furnished on an application.

*Note.* In instances of denial, a letter will be forwarded to the applicant explaining the reason for such action and a copy of the letter forwarded to HQDA (DAAG–PSI).

## 4–2. Factors in suspending solicitation privileges
In suspending privileges for cause, the installation commander will determine whether to limit suspension to the agent alone or to extend it to the company he represents. This decision will be based on the circumstances of the particular case. Included are—

    *a.* The nature of the violations and their frequencies;

    *b.* The extent to which other agents of the company have engaged in these practices;

    *c.* Previous warnings or suspensions; and

    *d.* Other matters that show the company's guilt or failure to take reasonable corrective or remedial action.

## 4–3. Preliminary investigation
When unauthorized solicitation practices have apparently occurred, an investigating officer will be appointed (AR 15–6). The investigating officer will gather sworn statements from all interested parties who have any knowledge of the alleged violations.

## 4–4. Suspension approval
The installation commander will personally approve all cases in which solicitation privileges are denied or suspended for cause and will make the final determination. This includes agents, companies, or other commercial enterprises. Authority to temporarily suspend solicitation privileges for 30 days or less while an investigation is conducted may be delegated by the commander to the installation solicitation officer or other designee. Exception to this time frame must be approved by The Adjutant General (DAAG–PSI) or by the oversea commander.

## 4–5. "Show-Cause" hearing
During the temporary suspension period, or prior to the installation commander's final determination when temporary suspension is not employed, a hearing will be conducted to provide an opportunity for the agent and/or company to show cause why the suspension should not be made final for a definite period of time."Show cause" is an opportunity for the agent, company, or both to present facts informally on their behalf. The company and agent will be notified, by letter, in advance of the pending hearing. If unable to notify them directly or indirectly, the hearing may proceed.

## 4–6. Suspension action
    *a.* When suspended for cause, immediately notify the company and the agent, in writing, of the reason. When the installation commander determines that suspension should be extended throughout the Department of the Army (whether for the agent or his company), send the case to HQDA (DAAG–PSI), Alexandria, VA 22331. Provide all factors on which the commander based his decision concerning the agent or company (exempt report, para 7–2*o*, AR 335–15). This notification should include—

    (1) Copies of the "show cause" hearing record or summary,

    (2) The installation regulations or extract,

    (3) The investigation report with sworn statements by all personnel affected by or having knowledge of the violations,

    (4) The statement signed by the agent as required in paragraph 2–8*c.*

    (5) Notification letters sent to the company and the agent advising of suspension of installation solicitation privileges, and

    (6) If the agent failed to respond to notification of the hearing, a copy of the letters sent to him and the company offering them the opportunity to be heard.

    *b.* If the grounds for suspension bear significantly on the eligibility of the agent or company to hold a State license or to meet other regulatory requirements, notify the appropriate State or local civil authorities.

## 4–7. Suspension period
All solicitation privileges suspended by installation commanders will be for a specific time. Normally, it will not exceed 2 years. Requests for suspension periods in excess of 2 years will be sent with the complete case to HQDA (DAAG–PSI), Alexandria, VA 22331, for approval. Lesser suspension may be imposed pending decision. When the final suspension period expires, the agent may reapply for permission to solicit at the installation authorizing the denial or suspension. If suspension was extended Army-wide by HQDA, applications of agents and companies for permission to again solicit on any Army installation must be made to HQDA prior to applying for such privileges at an individual installation.

## 4–8. Agents or companies with suspended solicitation privileges
Quarterly, HQDA will publish the names of agents and companies whose solicitation privileges have been suspended throughout the Department of the Army. If no change has occurred in the latest quarter, no list will be published.

Periodically, HQDA will publish the names of agents and companies whose solicitation privileges have been suspended on each installation, for information purposes for commanders. Installation commanders will furnish to HQDA the names of agents and companies when solicitation privileges are suspended, at the time of the suspension.

## 4–9. Exercise of "off limits" authority

*a.* In appropriate cases, installation commanders may have the Armed Forces Disciplinary Control Board investigate reports that cash or consumer credit transactions offered military personnel by a business establishment off post are usurious, fraudulent, misleading, or deceptive. If it is found that the commercial establishment engages in such practices; that it has not taken corrective action on being duly notified; and that the health, morale, and welfare of military personnel would be served, the Armed Forces Disciplinary Control Board may recommend that the offending business establishment be declared "off limits" to all military personnel. The procedures for making these determinations are in AR 190–24.

*b.* On finding that a company transacting cash or consumer credit business with members of the Armed Forces, nationwide or internationally, is engaged in widespread usurious, fraudulent, or deceptive practices, the Secretary of the Army may direct Armed Forces Disciplinary Control Boards in all geographical areas where this occurred to investigate the charges and take appropriate action.

## Appendix A

**Section I**
**Required Publications**
This section contains no entries.

**Section II**
**Related Publications**
This section contains no entries.

**Section III**
**Prescribed Forms**
This section contains no entries.

**Section IV**
**Referenced Forms**
This section contains no entries.

## Appendix B
## Standards of Fairness

**1.**
No finance charge contracted for, made, or received under any contract shall be in excess of the charge which could be made for such contract under the law of the place in which the contract is signed in the United States by the serviceman. In the event a contract is signed with a United States company in a foreign country, the lowest interest rate of the state or states in which the company is chartered or does business shall apply.

**2.**
No contract or loan agreement shall provide for an attorney's fee in the event of default unless suit is filed in which event the fee provided in the contract shall not exceed 20 percent of the obligation found due. No attorney's fee shall be authorized if he is a salaried employee of the holder.

**3.**
In loan transactions, defenses which the debtor may have against the original lender or its agent shall be good against any subsequent holder of the obligation. In credit transactions, defenses against the seller or its agent shall be good against any subsequent holder of the obligation provided that the holder had actual knowledge of the defense or under condition where reasonable inquiry would have apprised him of this fact.

**4.**
The debtor shall have the right to remove any security for the obligation beyond State or national boundaries if he or his family moves beyond such boundaries under military orders and notifies the creditor, in advance of the removal, of the new address where the security will be located. Removal of the security shall not accelerate payment of the obligation.

**5.**
No late charge shall be made in excess of 5 percent of the late payment, or $5.00 whichever is the lesser amount. Only one late charge may be made for any tardy installment. Late charges will not be levied where an allotment has been timely filed, but payment of the allotment has been delayed.

**6.**
The obligation may be paid in full at any time or through accelerated payments of any amount. There shall be no penalty for prepayment and in the event of prepayment that portion of the finance charges which have insured to the benefit of the seller or creditor shall be prorated on the basis of the charges which would have been ratably payable had finance charges been calculated and payable as equal periodic payments over the terms of the contract and only the prorated amount to the date of prepayment shall be due. As an alternative the "Rule of 78" may be applied, in which case its operation shall be explained in the contract.

**7.**

No charge shall be made for an insurance premium or for finance charges for such premium unless satisfactory evidence of a policy, or insurance certificate where State insurance laws or regulations permit such certificates to be issued in lieu of a policy, reflecting such coverage has been delivered to the debtor within 30 days after the specified date of delivery of the item purchase or the signing of a cash loan agreement.

**8.**

If the loan or contract agreement provides for payments in installments, each payment, other than the down payment, shall be in equal or substantially equal amounts, and installments shall be successive and of equal or substantially equal duration.

**9.**

If the security for the debt is repossessed and sold in order to satisfy or reduce the debt, the repossession and resale will meet the following conditions:

*a.* The defaulting purchaser will be given advance written notice of the intention to repossess;

*b.* Following repossession, the defaulting purchaser will be served a complete statement of his obligations and adequate advance notice of the sale;

*c.* He will be permitted to redeem the item by payment of the amount due before the sale, or in lieu thereof submit a bid at the sale;

*d.* There will be a solicitation for a minimum of three sealed bids unless sold at auction.

*e.* The party holding the security, and all agents thereof, are ineligible to bid.

*f.* The defaulting purchaser will be charged only those charges which are reasonably necessary for storage, reconditioning, and resale, and

*g.* He shall be provided a written detailed statement of his obligations, if any, following the resale and promptly refunded any credit balance due him, if any.

**10.**

A contract for personal goods and services may be terminated at any time before delivery of the goods or services without charge to the purchaser. However, if goods made to the special order of the purchaser result in preproduction costs, or require preparation for delivery, such additional costs will be listed in the order form or contract. No termination charge shall be made in excess of this amount. Contracts for delivery at future intervals may be terminated as to the undelivered portion, and the purchaser shall be chargeable only for that proportion of the total cost which the goods or services delivered bear to the total goods called for by the contract. (This is in addition to the right to rescind certain credit transactions involving a security interest in real estate provided by section 125 of the Truth-in-Lending Act, P.L. 90–321 (15 USC 1601) and section 226.9 of Regulation Z (12 CFR 226).

*DoDI 1344.07, March 30, 2006*

E5.  ENCLOSURE 5

PERSONAL COMMERCIAL SOLICITATION EVALUATION

| PERSONAL COMMERCIAL SOLICITATION EVALUATION | | | |
|---|---|---|---|
| **PRIVACY ACT STATEMENT** | | | |

**AUTHORITY:** Section 301 of Title 5 U.S.C.

**PRINCIPAL PURPOSE(S):** Information on this form will be used to document the experience with the sales representative who provides the Service member with your evaluation.  This information will be maintained at the installation level.  It may be forwarded to officials within the Department of Defense responsible for oversight of personal commercial solicitation practices if further action is required.  These officials may need to make contact concerning the solicitation described in questions 2, 3, and 4.  Service member response will help ensure sales representatives conduct themselves fairly and in accordance with DoD Instruction 1344.7.  This information will be maintained as part of a case file in the event proceedings are considered necessary to deny or withdraw permission for the sales representative and/or the company to solicit on one or more installations.

**ROUTINE USE(S):**  None.

**DISCLOSURE:**  Voluntary.  There is no consequence to the Service member for not completing this evaluation.

Please take a moment to respond to the following questions concerning your experience with the sales representative who provided you this evaluation.  Your response will help ensure sales representatives conduct themselves fairly and according to the policies outlined in DoD Instruction 1344.7.
**When you have completed this evaluation, please send it to the Installation Commander or his/her designated representative.  Please do not give the completed evaluation back to the sales representative to mail for you.**

| 1.  SALES REPRESENTATIVE WHO CONTACTED YOU AND HIS OR HER COMPANY | | | |
|---|---|---|---|
| **a.  NAME OF SALES REPRESENTATIVE**<br>Harry Cotter | **b.  COMPANY NAME**<br>All American Life Insurance Company | | |

| 2.  MAKING THE APPOINTMENT *(Mark (X) "Yes" if any of the following are true)* | YES | NO |
|---|---|---|
| a.  The sales representative failed to make an appointment in advance to see me. | X | |
| b.  The initial contact to schedule an appointment occurred while I was on duty (during normal duty hours). | | X |
| c.  My initial contact with the sales representative was in response to a notice in an official installation bulletin, marquee, announcement or newsletter that said he or she would be on the installation during a specific time or at a specific place. | | X |
| d.  A superior in my chain of command advised or required me to meet with the sales representative. | X | |
| e.  The sales representative made initial contact with me via a government phone, fax, or computer. | | X |

| 3.  TIME AND PLACE OF THE APPOINTMENT *(Mark (X) "Yes" if any of the following are true)* | YES | NO |
|---|---|---|
| a.  The sales presentation took place on the installation while I was on duty (during normal duty hours). | X | |
| b.  The sales presentation took place during a mandatory group meeting with other DoD personnel or as part of a military service sponsored financial education program. | | X |
| c.  The sales presentation took place in an unauthorized or restricted area. | X | |
| d.  The sales representative used an on-base facility as a showroom to display his or her product or services.  (This does not include displays conducted by military family members in their on-base residence.) | | X |

| 4.  CONDUCT DURING THE APPOINTMENT *(Mark (X) "Yes" if any of the following are true)* | YES | NO |
|---|---|---|
| a.  I was unduly pressured to buy the product or service. | | X |
| b.  I was not given the adequate facts, or was induced to purchase based on factors other than the merits of the product or service. | | X |
| c.  I was offered an incentive to meet with the sales representative, purchase the product or service, or drop a competing offer. | X | |
| d.  The sales representative is a DoD employee of senior rank. | | X |
| e.  The sales representative implied that he or she is sponsored or endorsed by . . . military, the installation or my unit.  (For example, the representative used an official or unofficial title such as "unit advisor" or "installation consultant.") | X | |
| f.  The sales representative had a military pay allotment or direct deposit form in his/her possession, or requested "MyPay" account access or PIN number. | | X |

| 5.  YOUR CONTACT INFORMATION | | | |
|---|---|---|---|
| **a.  NAME** *(Last, First, Middle Initial)*<br>Hargrove, Harold H. | **b.  HOME TELEPHONE NUMBER**<br>*(Include area code)*<br>(901) 336-1001 | **c.  WORK TELEPHONE NUMBER**<br>*(Include area code)*<br>(901) 436-8988 | |
| **d.  E-MAIL ADDRESS**<br>hhh@coastal.com | **e.  UNIT ADDRESS**<br>329 Inf Bn (ABN), Fort Bragg, NC  28307 | | |

**DD FORM 2885, APR 2006**                                                                                    FormFlow/Adobe Professional 6.0

# Crimes and Criminal Procedure - 18 USC Section 1382

## Sec. 1382. Entering military, naval, or Coast Guard property

    Whoever, within the jurisdiction of the United States, goes upon any military, naval, or Coast Guard reservation, post, fort, arsenal, yard, station, or installation, for any purpose prohibited by law or lawful regulation; or
    Whoever reenters or is found within any such reservation, post, fort, arsenal, yard, station, or installation, after having been removed therefrom or ordered not to reenter by any officer or person in command or charge thereof -
    Shall be fined under this title or imprisoned not more than six months, or both.

AMENDMENTS

    1994 - Pub. L. 103-322 substituted "fined under this title" for "fined not more than $500" in last par.

*Last modified: April 12, 2006*

**Control of Personal Commercial Solicitation on Army Installations (Revised 9-30-05)**

| Installation | Company/Agent | Suspension Date | Action | Reason for Action |
|---|---|---|---|---|
| Fort Leonard Wood, MO | American-Amicable Hammond, Fred Edwards, Tommy | 1994 | These agents barred permanently from the installation IAW 18 USC Sec 1382 and AR 190-45 (Law enforcement reporting). | Extensive internal files going back over 10 years. |
| Fort Jackson, SC | Military Benefits Center Vogel, Harry T. | Feb 04 | This agent's commercial solicitation privileges suspended IAW AR 210-7 for two-years. | Solicited junior enlisted personnel after permit expired. Possessed and assisted in administrative processing of allotment forms. Did not observe "cooling off" period. Offered gratuities for providing audience. |
| Fort Jackson, SC | Military Benefits Center | Feb 04 | Company's commercial solicitation privileges suspended IAW AR 210-7 (Commercial Solicitation on Army Installations) for two years. | Provided lack of oversight of agents. Agents solicited with expired permits, possessed and ...sed in the administrative processing of allotment forms, failed to observe "cooling off" periods, and offered gratuities for providing audiences. (Note: This company is not affiliated with Military Benefits Association (MBA)). |

1

# Control of Personal Commercial Solicitation on Army Installations (Revised 9-30-05)

| Installation | Company/Agent | Suspension Date | Action | Reason for Action |
|---|---|---|---|---|
| Fort Bragg, NC | **American Fidelity** Johnson, Andre | Feb 01 | Agent barred permanently from the installation IAW USC Sec 1382 and AR 190-145 (Law enforcement reporting). | Improper commercial solicitation practices; soliciting in the barracks without appointments; possession of allotment forms, offering gratuities for referring other soldiers/providing leads. |
| Fort Bragg, NC | **American Fidelity** Guthary, Robert | Mar 04 | Agent barred permanently from the installation IAW 18 USC Sec 1382 and AR 190-45 (Law enforcement reporting). | Possession and inappropriate processing of allotment forms. |
| Fort Bragg, NC | **Veterans Affairs Services** Foster, Michael Wagner, Jean Alliman, Desire Alliman, Steve Reynolds, Judith | Apr 04 | These agents barred permanently from the installation IAW 18 USC Sec 1382 and AR 190-45 (Law enforcement reporting). | Soliciting without a permit; conducting unit briefings/captive audience; possessing allotment forms; engaging in prohibited/deceptive solicitation practices. |
| Fort Bragg, NC | **American Fidelity** Burns, Monica | Feb 05 | Agent barred permanently from the installation IAW 18 USC Sec 1382 and AR 190-45 (Law enforcement reporting). | Unauthorized solicitation practices. |

2

## Control of Personal Commercial Solicitation on Army Installations (Revised 9-30-05)

| Installation | Company/Agent | Suspension Date | Action | Reason for Action |
|---|---|---|---|---|
| Fort Benning, GA | **American Amicable** Dickerson, Carl McGhee, John T. Gould, Robert L. | Oct 04 | These agents barred permanently from the installation IAW 18 USC Sec 1382 and AR 190-45 (Law enforcement reporting). | Soliciting soldiers at the BCTB training site; soliciting captive audiences (BCTB units in classes); solicited soldiers while in an on-duty status. Mr. Gould also sold insurance without possessing a valid Georgia insurance license. |
| Fort Benning, GA | **Madison National American Fidelity** Dickerson, Carl McGhee, John T. | Oct 04 | These agents barred permanently from the installation IAW 18 USC Sec 1382 and AR 190-45 (Law enforcement reporting). | Soliciting soldiers at the BCTB training site; soliciting captive audiences (BCTB units in classes); solicited soldiers while in an on-duty status. (Note: These violations occurred during 2002). |
| Fort Benning, GA | **American Amicable** Thurman, Ronald | Oct 03 | Agent barred permanently from the installation IAW 18 USC Sec 1382 and AR 190-45 (Law enforcement reporting). | Soliciting soldiers in training areas. |

(b)

(5

LookSmart

# FIND ARTICLES | 10,000,000 Articles
**Where To Look For What You Need.™**



FindArticles > Publications > Free > Business & Finance > Market Wire > July, 2003 > Article

Ads by Google

FIND `trans world assurance co` IN  free and premium articles  ( **Look** )  **Advanced Search**

**Find Magazines by Topic**

▾   **CLICK TO VIEW**   ▾      🖫 SAVE      🖶 PRINT      ▯▸ EMAIL      ▸▯ LINK

## Trans World Assurance Co. Wins Policy Holder Class Action Trial

Market Wire, July, 2003

Recent Jury Verdicts found that Trans World Assurance Co. did not defraud its policy holders in the highly publicized California class action lawsuit Heathcock v. Trans World Assurance Company. In rejecting the plaintiffs' claims, the Jury's Special Verdict specifically found that no misrepresentations were made to the plaintiffs and that there was no breach of the covenant of good faith and fair dealing. In the Decision, the Court found that Trans World did not act unlawfully, fraudulently or unfairly in selling and servicing in Flexible Dollar Builder (FDB) life insurance policies. The Court also reversed earlier rulings certifying the case as a class action.

**Find More Results for: "trans world assurance co. "**

Trans World Assurance...

Trans World Assurance:...

A.M. Best Takes...

Trans World Assurance...

The Special Verdicts and Court Decision are consistent with the results of other cases that have gone to trial and prove once and for all that TWA's agents fairly disclose the material terms of the FDB. Unfortunately, while the Heathcock lawsuit was pending, its unproved allegations received much notoriety and often were cited as evidence of misconduct by TWA's agents. The Jury Verdicts and Court Decision confirm that Trans World and its agents involved with the plaintiffs are innocent of any wrongdoing. "We are pleased that Trans World and its agent sales force have been vindicated by the Jury Verdicts and the Court Decision," as stated by Trans World Assurance Co.'s management.

In summarizing the Jury's decision the Court stated:

"On March 21, 2003, the jury returned its special verdicts in favor of both TWA and AFLI. These special verdicts included the following findings: (1) Neither TWA nor AFLI made any false representation, whether intentionally or negligently, to Heathcock, Cavanaugh or Bremer. (2) Neither TWA nor AFLI concealed or suppressed any material fact to Heathcock, Cavanaugh or Bremer. (3) Neither TWA nor AFLI breached the implied covenant of good faith and fair dealing, which breach caused damage to Heathcock, Cavanaugh or Bremer."

In its own opinion, the Court stated:

"The only inferences that can reasonably be drawn from the jury's special verdicts are that either (a) Heathcock, Cavanaugh and Bremer knew that the FDB was life insurance, or (b) Defendants' agents fully disclosed the true nature of the FDB to each of the three named plaintiffs and ye, for some reason through no fault of Defendants (e.g., the three named plaintiffs did not listen to what they were being told by Defendants agents), Heathcock, Bremmer and Cavanaugh still did not understand what they were buying."

Settlements and Verdicts: Trans World Assurance Company.                 http://www.lawyersandsettlements.com/case/transworldassurancecompany

(c)

Settlements >> Trans World Assurance Company.

## Settlements and Verdicts

### Trans World Assurance Company.

A jury has found in favor of Trans World Assurance Co. in the class action lawsuit filed against the company by policy holders. The decision states that the jury found that the company did not defraud its policy holders, made no misrepresentations to the plaintiffs and that there was no breach of the covenant of good faith and fair dealing. The ruling also reversed the previous rulings which had certified the case as a class action. (Jul-24-03) [PRESS RELEASE]

### Register your Case

If you have a similar problem and would like to be contacted by a lawyer at no obligation, please click the link below to submit your complaint.

Click here to submit your complaint through a secure form

*Posted on Sep-5-03*

Search

Services for Lawyers

Home

**Lawsuits:**

Personal Injury

Unpaid Overtime

Dangerous Drugs

Defective Products

Stock Fraud

News Articles

**Hot Lawsuits:**

All Hot Lawsuits

SSRI Birth Defects

California Labor Laws

Cell Phone Termination Fees

Composix Kugel Mesh Patches

Credit Card Rate Hikes

Defective Product

Elidel

Employee Stock Options/ERISA

Florida Cigarettes Side Effects

Fresh Bagged Spinach

Immigration Citizenship

Ink Jet Printer Cartridges

Ketek

Kitec XPA Pipe

Paxil Birth Defects

Propane Explosions

Protopic

Ralphs Grocery

Trasylol

Unpaid Overtime

UnumProvident

(e)

Still pending are proceedings in which the companies are seeking to recover in excess of $200,000 from the plaintiffs in court costs.

Trans World Assurance Company
885 South El Camino Real
San Mateo, California  94402

Company: Trans World Assurance Company Voice: 650-348-2300

Ads by Google

Life Insurance Company
Life Insurance Company Options! Life Insu... nce Company Starts
Here.
Local.Cars.AlltheAutomotive.com

Life assurance
Save Time & Money with Top Carriers Instant issue, term, whole
life ins
www.PremiumComparisons.com

Get Life Insurance Rates
Find Life Insurance Vendors & Rates in Your Area with
Superpages.com
www.superpages.com



1 - 2 - Next

Find Featured Titles for: Business & Finance

| CLICK TO VIEW ▼ |

Content provided in
partnership with

market WIRE

© 2006 FindArticles™ - LookSmart, Ltd. · About Us · Privacy Policy · Terms of Service · Advertise with Us · Site Map · RSS Site Map

(d)

https://www.transworldassurance.com/twa/TWaboutus.pgm?TASK=p.

*representation, whether intentionally or negligently, to Heathcock, Cavanaugh or Bremer; (2) Neither TWA nor AFLI concealed or suppressed any material fact to Heathcock, Cavanaugh or Bremer; (3) Neither TWA nor AFLI breached the implied covenant of good faith and fair dealing, which breach caused damage to Heathcock, Cavanaugh or Bremer."*

---

**FINANCIAL SECURITY FOR EVERY AMERICAN**

All Rights Reserved Trans World Assura'  a 2003

Privacy Notice    Terms and Conditions

DEC 13

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

JACK A. SCHWANER

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF __88688__
(EXCEPT IN U.S. PLAINTIFF CASES)

Pro se (N/A)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

## DEFENDANTS

DAVID S.C. CHU

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

Case: 1:07-cv-02349
Assigned To : Sullivan, Emmet G.
Assign. Date : 12/19/2007
Description: Admn. Agency Review

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☑ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties
in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES
(PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ☐ A. Antitrust

☐ 410 Antitrust

### ☐ B. Personal Injury/ Malpractice

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ☑ C. Administrative Agency Review

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☑ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ☐ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

## ☐ E. General Civil (Other)   OR   ☐ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

— 2 —

| □ **G.** *Habeas Corpus/ 2255* | □ **H.** *Employment Discrimination* | □ **I.** *FOIA/PRIVACY ACT* | □ **J.** *Student Loan* |
|---|---|---|---|
| □ 530 Habeas Corpus-General<br>□ 510 Motion/Vacate Sentence | □ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | □ 895 Freedom of Information Act<br>□ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | □ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| □ **K.** *Labor/ERISA (non-employment)* | □ **L.** *Other Civil Rights (non-employment)* | □ **M.** *Contract* | □ **N.** *Three-Judge Court* |
| □ 710 Fair Labor Standards Act<br>□ 720 Labor/Mgmt. Relations<br>□ 730 Labor/Mgmt. Reporting & Disclosure Act<br>□ 740 Labor Railway Act<br>□ 790 Other Labor Litigation<br>□ 791 Empl. Ret. Inc. Security Act | □ 441 Voting (if not Voting Rights Act)<br>□ 443 Housing/Accommodations<br>□ 444 Welfare<br>□ 440 Other Civil Rights<br>□ 445 Americans w/Disabilities-Employment<br>□ 446 Americans w/Disabilities-Other | □ 110 Insurance<br>□ 120 Marine<br>□ 130 Miller Act<br>□ 140 Negotiable Instrument<br>□ 150 Recovery of Overpayment & Enforcement of Judgment<br>□ 153 Recovery of Overpayment of Veteran's Benefits<br>□ 160 Stockholder's Suits<br>□ 190 Other Contracts<br>□ 195 Contract Product Liability<br>□ 196 Franchise | □ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

| ⊙ 1 Original Proceeding | □ 2 Removed from State Court | □ 3 Remanded from Appellate Court | □ 4 Reinstated or Reopened | □ 5 Transferred from another district (specify) | □ Multi district Litigation | □ 7 Appeal to District Judge from Mag. Judge |
|---|---|---|---|---|---|---|

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS □ ACTION UNDER F.R.C.P. 23   **DEMAND $**   Check YES only if demanded in complaint **JURY DEMAND:** □ YES ⊙ NO

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   □ YES   □ NO   If yes, please complete related case form.

**DATE** *12/19/07*   **SIGNATURE OF ATTORNEY OF RECORD** *NCO*

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

N:\forms\js-44.wpd